## Tennant Land Company v. Nordeman.

(Decided May 14, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Vendor and Purchaser—Real Estate—Sale of—Contract by Vendor to Improve—Failure to Improve—Rescission.—Where a

vendor sells suburban property under a contract to make sewer and street improvements, which constitute an essential part of the consideration, and the vendor fails for an unreasonable time to make such improvements, the purchaser will be entitled to a rescission of the contract.

2.   Same—Ratification—Waiver.—Where a vendor sells real estate under an advertisement to make improvements in the fall of 1906, and the purchaser buys another lot in the spring of 1907, both lots being bought upon the installment plan, and later takes a deed to the lots and executes purchase notes therefor, these acts on his part will not amount to a ratification of the contract, and a waiver of the grounds of rescission, where the vendor is engaged in making the improvements, and assures the purchaser that they will be made, though he subsequently fails to do so, as time in such a case is not of the essence of the contract, and the vendor has a reasonable time in which to make the improvements.

3.   Same—Rescission—Action for—Defense.—After action is brought by a purchaser of real estate to rescind a contract because of the failure of the vendor to comply with his agreement with reference to improvements, an offer to perform, or a partial performance will not constitute a defense.

WILLIAM FURLONG for appellant.

PAUL B. COLLINS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In November, 1906, appellee, Charles B. Nordeman, entered into a contract with appellant, the Tennant Land Company, whereby he agreed to purchase, and it agreed to sell him, lot 666 and a part of lot 665 in the Tennant Land Subdivision of the Dulaney farm, near 18th and Lexington streets, in the city of Louisville. The purchase price was $900, or $20 a front foot, payable in certain installments. The lot so purchased was located on Grand avenue. Appellee's deposit book, which was the contract between the parties, contained the following stipulation:

"The improvements of Grand avenue, as advertised, are included in the price named in the contract."

According to the advertisement, appellant agreed to construct a large sewer, sufficient to drain the entire tract, water and gas mains, with connections to the property line, concrete side-walks and curbing, and a modern asphalt roadway.

In February, 1907, Nordeman, by a similar contract,

purchased from appellant lot 664, and a part of lot 665, being the adjoining lot in the same subdivision. The purchase price was $630, or $14 a foot, and there was a similar contract relative to improvements. Appellant did put down some sidewalks, but failed to comply with its agreement as to water connections and curbing, and as to the construction of a modern asphalt roadway. However, on the assurance of appellant's agent that all things would soon be made right, appellee continued to pay on his two contracts until January, 1909, at which time he had paid on his first contract $153 in cash, and on his second contract $135 in cash. At that time, he exercised his right under the contract, and took a deed to both lots. He also executed his four negotiable promissory notes for $310.50, representing the balance of the purchase price, and due in six, twelve, eighteen and twenty-four months. In the fall of 1909, appellee elected to rescind his contracts on the ground that appellant had failed to comply with its contract with reference to the water mains and the construction of a modern asphalt roadway. At the same time he offered to return the property to appellant, and requested the return of his money, which was refused. Thereupon he brought this action for a rescission of the contract, and for recovery of the sum paid by him on the purchase price of the lots, with interest from the filing of the action. Appellant filed an answer, denying the allegations of the petition. On submission of the case, the chancellor granted the relief prayed for, and from that judgment this appeal is prosecuted.

As the contract between the parties provided for the improvements as advertised, it was, of course, proper to show what improvements were advertised. As it was advertised that a "modern asphalt roadway" would be constructed, and this was one of the improvements provided for in the contract, it was competent to show by parol evidence what the parties contemplated, and this was done by showing what was generally understood in the community at that time as constituting a modern asphalt roadway. It appears from the evidence that when the contracts were entered into, the only asphalt streets in Louisville were what is known as hot or sheet asphalt streets. The method of constructing such a street is as follows: A base of concrete about six inches deep is first made. Then a binder of crushed

rock is used. On top of this is placed powdered asphalt, containing about 12 per cent bitumen. This asphalt is heated to about 300 degrees Fahrenheit. The asphalt top is then rolled with a steam roller.

It appears that appellant attempted to comply with its contract by constructing a cold Kentucky rock asphalt street. This kind of a street is constructed with a macadam base. On top of the base is placed cold Kentucky rock asphalt, which is raked and rolled. The cold Kentucky rock asphalt differs in its ingredients from powdered asphalt in that it is made of powdered Kentucky rock, and does not contain the same amount of bitumen as the hot asphalt. All the evidence in the case shows that a cold Kentucky asphalt street is not a modern asphalt roadway, and at the time the contracts with appellee were entered into, no such thing as a cold Kentucky rock asphalt street was known. It also appears that the cold asphalt street is not as lasting as the hot asphalt street. As the former chairman of the Board of Public Works puts it, "if you attempt to sweep the street, there will be nothing left." The evidence leaves no doubt that the construction of the cold asphalt street was not a compliance with appellant's undertaking.

It also appears from the evidence that the parties contemplated sewer connections for each lot, but appellant decided to put in one connection for each two lots. This, however, did not comply with the city sewer ordinances, and the city refused to permit connection to be used except for one lot. This left every other lot without sewer connection.

As the property in question was unimproved suburban property, it is manifest that the improvements contemplated by the contract were necessary to its proper enjoyment as a home, or to its profitable sale. That being true, they constituted an essential part of the consideration. As appellant utterly failed to comply with its contract with reference to such improvements, we conclude that the chancellor properly decreed a rescission.

But it is insisted that because the advertisement stated that the improvements were well under way and would be completed in the fall of 1906, and appellee bought one of the lots in the early part of 1907, and about two years and a half thereafter took deeds to both

lots and executed his notes for the balance of the purchase price, these facts constituted a ratification of the contract, and a waiver of the grounds upon which a rescission was asked. While it is true that the advertisement did state that the improvements would be completed in the fall of 1906, we conclude that time was not of the essence of the contract, but that appellant had a reasonable time in which to make the improvements; and that appellee's purchase of the second lot and acceptance of the deed did not amount to a waiver of his right to rescind, because appellant was attempting all the time to carry out the agreement and was assuring appellee that it would be carried out. That being true, it was not apparent at the time of the acceptance of the deed that the improvements would not be made. When it did become reasonably apparent that the improvements contracted for would not be made, appellee elected to rescind.

It appears that in the month of May, 1911, after this action had been pending about ten months, appellant tendered an amended answer and counterclaim, wherein it pleaded that the city of Louisville, pursuant to an ordinance passed by it, had entered into a contract with one Gosnell for the improvement of Grand avenue. That Gosnell was engaged in fulfilling his contract, and that appellant had agreed and obligated itself in writing to pay Gosnell the apportionment warrant to be issued by the city of Louisville against the property of appellee, Nordeman. The court declined to permit this answer to be filed, but by order made it a part of the record. This action of the court was proper. Appellee had already elected to rescind, and had brought his suit for that purpose. An offer to perform, or a partial performance after suit was brought, did not constitute a defense. Fabrice v. Von der Brelie, 190 Ill., 460, 60 N. E., 835.

Judgment affirmed.