## Nolin Milling Company v. White Grocery Company.

(Decided February 11, 1916.)

### Appeal from Whitley Circuit Court.

Principal and Agent—Sale by Traveling Salesman—Not Binding Until Accepted by Principal.—Where the purchaser knew or had reason to know that a traveling salesman's authority went no further than to solicit and transmit orders, in the absence of a showing of special authority on the part of the salesman, a writing given the purchaser by the salesman purporting to be a sale of flour by the salesman's principal, evidences only a conditional sale, that is, a sale if approved by the principal within a reasonable time after his receipt of the order; the approval of the principal being necessary to complete the sale.

L. A. FAUREST and H. H. TYE for appellant.

J. B. SNYDER and H. C. GILLIS for appellee.

Opinion of the Court by Judge Settle—Reversing.

The appellee, White Grocery Company, a corporation engaged in the grocery business at Williamsburg, Kentucky, recovered in the Whitley circuit court a verdict and judgment for $1,300.00 damages against the appellant, Nolin Milling Company, a corporation engaged in the milling business at Nolin, Kentucky, alleged to have resulted from the violation by the latter of a contract whereby it sold to appellee, as further alleged, six hundred barrels of flour at $4.00 per barrel, none of which was delivered. Appellant was refused a new trial, hence this appeal.

Appellant's first complaint is that the Whitley circuit court had no jurisdiction of the case. This contention will not be considered, because the objection to jurisdiction was not properly made in that court. Moreover, the question of jurisdiction depends upon whether the contract sued on was made by the parties. If there was such a contract, as it was to be performed in Whitley county, that fact gave the circuit court of that county jurisdiction of the action. Civil Code, section 72. On the other hand, if, as contended by appellant, there was no contract, the peremptory instruction asked by it should have been given by the court.

It is conceded that the alleged contract for the sale of the flour was made between J. B. White, appellee's president and general manager, and appellant's traveling salesman, Charles Chandler, July 28, 1914, and that Chandler at the time delivered to White the following writing:

"Sold White Grocery Co., Williamsburg, Ky., and Jellico, Tenn., 600 Bbls. E. L. 1/8 at $4.00. Net cash for Aug., Sept., Oct. & Nov. delivery, 5c carrying charges after Nov. 30th.

"Draw through First Nat. Bank, Williamsburg, Ky.
"(Signed) Nolin Milling Co.,
"By Charlie Chandler."

It seems to be admitted that "5c carrying charges" means that the purchaser will pay five cents per month on each delayed consignment of goods until received. The letters "E. L.," meaning electric light, indicate the name of the grade of flour appellee claims to have purchased. It is insisted for appellee that this writing evidences an absolute sale to it of the flour

therein described, but contended by appellant that it evidenced a mere offer to purchase subject to its acceptance, or conditional sale of the flour subject to its approval; that Chandler was merely a traveling salesman in its employ, having authority to take orders for the sale of its flour, and that such orders, if accepted by it, became contracts binding upon it as well as the purchaser, but that until so accepted they were not obligatory upon either party.

It appears that Chandler did not forward or deliver to appellant a copy of the writing in question, but merely reported the order to it, and that upon receiving the order on the morning of July 29, 1914, appellant immediately sent appellee the following telegram, showing its rejection of the order:

"Nolin, Ky., July 29.

"White Grocery Co.,
    "Williamsburg, Ky.

"Extreme conditions forbids our confirmation of flour sold by Chandler.
                                    "NOLIN MLG. Co."

On the same day and immediately after sending the telegram, appellant wrote appellee the following letter:

"Nolin, Ky., July 29, 1914.

"White Grocery Co.,
    "Williamsburg, Ky.

"Dear Sirs:

"We have your order, given to our Mr. Charlie Chandler, to hand today, and regret that this sale was made just at this time when we have an unusual condition confronting us, and that we are compelled to reject the order.

"With the war news putting wheat up on the Chicago market to amount of 8c to 10c per bushel, you can readily see why we cannot accept sale of 600 barrels flour at such a low price.

"We have been anxious to get your firm started with us for a long time, and regret that we got this order just as this excitement came on in wheat, and have to decline the business.

"Of course, we suppose you understand that we have the legal right of rejection on sales made by our travel-

ing representative, and we wired you promptly to this effect.

"We shall hope you will be willing to give us some business when conditions adjust themselves.

"Yours truly,

"Nolin Milling Co.

"J. F. A."

Other letters passed between the parties, those written by appellee insisting upon the shipment of the flour under the writing given it by Chandler, and those written by appellant continuing to assert its right to reject the order. That Chandler was a mere drummer or traveling salesman for appellant is established beyond doubt by all the evidence, and the evidence of appellant establishes with equal certainty the fact that the only authority he had as a traveling salesman was to take orders for the purchase of its flour, subject to its approval or rejection. This is not contradicted by any evidence introduced in behalf of appellee, unless such evidence be furnished by the writing given White, its president and manager, by Chandler. The former does not testify to anything occurring at the time the writing was given or previously, that showed the latter's authority to go beyond the mere soliciting and taking of orders for appellant's flour. It also appears from appellant's evidence, and is uncontradicted, that all bill heads, price quotations, order blanks and letter heads used by it and its drummers have plainly printed on them the following words: "All sales made by agents or brokers subject to our acceptance." So every one who had dealings with appellant or its drummers, either by correspondence or by receiving quotations, or bills for merchandise sold, were thereby notified that its traveling salesmen had no authority to make a binding contract for it, but that all orders which were taken by such traveling salesmen must be accepted by appellant before they become binding upon it. It also appears from the testimony of White, appellee's president and manager, that at intervals during the seven years previous to the transaction he had with Chandler out of which this action arose, he purchased flour from appellant through Chandler and otherwise in the usual course of business, and during the same time had correspondence with appellant, and paid the bills he made with it, in view of which he must have had notice of the statement referred to, contained in its

bill heads, price quotations, order blanks and letter heads, showing what authority was possessed by Chandler and its other traveling salesmen in the matter of selling its flour.

Chandler did not testify in the case and it does not appear whether any effort was made, either by appellant or appellee, to procure his testimony, or that he was in appellant's employ at the time of the trial. In the absence of Chandler's testimony we are unadvised as to what caused him to give White the writing instead of the printed form of order he was accustomed to use in such transactions. Perhaps his supply of the printed order blanks customarily used by him for taking such orders had been exhausted; but whatever may have been the reason for the use of the writing, in our opinion there is nothing in its language indicating that the sale it was intended to evidence was of any other character than such as he was authorized and accustomed to make; that is, a sale of the flour described therein subject to the approval or rejection of appellant. Notwithstanding his statement of the circumstances under which the writing was given him by Chandler and his insistence that it evidences an absolute sale, White, who admitted previous similar purchases through Chandler, did not, in testifying, explicitly say that his purchase of the flour was not understood by him to be conditioned upon appellant's approval of the sale and acceptance of the writing as an order from him for the flour.

No doctrine is better settled than that a principal is bound by such acts of his agent as are performed within the apparent scope of the latter's authority, even though they may go beyond his real authority. It is not here claimed, however, that Chandler had express authority to make a contract binding upon appellant, but contended that he had implied authority to do so, and that what he did in the transaction with White, appellee's president and manager, was within the apparent scope of his authority. In our opinion the facts of this case fail to show such implied authority, in reaching which conclusion we are controlled by numerous decisions of this court.

In Charles Brown Grocery Co. v. Beckett, etc., 22 R., 393, the limitations upon the authority of a drummer or traveling salesman are clearly defined. In the opinion it is said:

"The general rule in regard to the authority of commercial travelers is thus stated in the Amer. and English Enc. of Law, volume 6, page 227, 2d edition: 'In the absence of special authority to bind his principal the drummer can merely solicit and transmit the order, and the contract of sale does not become complete until the order is accepted by his principal.' It has been held that when the purchaser completes his transactions with the drummer no binding contract has been made, nor any sale, absolute or conditional; the purchaser may countermand his order at any time before the goods are shipped, or the house may refuse to accept the order; that it is a mere proposal to be accepted or not, as the house may see fit, and may be withdrawn by the purchaser at any time before its final acceptance. (McKindley v. Dunham, 55 Wis., 515; Bensberg v. Harris, 46 Mo. App., 404.)"

In John Matthews Apparatus Co. v. Renz & Henry, 22 R., 1528, the question involved was whether an order given by a merchant to a drummer for the purchase of soda water apparatus, in which it was agreed that two old soda fountains would be taken in exchange for the new, was a binding contract without the approval of the drummer's employer. The intending purchaser having brought an action to recover damages against the latter for its failure to deliver the articles claimed to have been purchased, it was held that the order was in no sense a closed transaction, and that in the absence of special authority to bind his principal the drummer could merely solicit and transmit the order, and the contract of sale did not become complete in the absence of an acceptance of the order by the drummer's employer. In the opinion it is said:

"We consider that the main and only necessary question for us to determine is, whether the transaction in question was a contract, or merely an offer or order, which either party was at liberty to decline before final acceptance. The indisputable facts are that Russell, the traveling salesman of appellant, was a 'drummer,' a term that has come to have a fixed and proper place in our language, as well as in our law. That this transaction was the usual taking of an order by the drummer, and transmitting it to his 'house' for action, approval or rejection. The custom of so doing business is of such long standing, so extensive and so important in the com-

mercial world, especially in the United States, that the courts will take notice of it. They have done so, and this court has. In the Charles Brown Grocery Co. v. Beckett, 22 Ky. Law Rep., 394, we recognized in this State what appears to be the general rule in most or all of the States, quoting it in this language: 'In the absence of special authority to bind his principal, the drummer can merely solicit and transmit the order, and the contract of sale does not become completed until the order is accepted by his principal.'

"Any other construction of these transactions would tend to so materially hamper and cripple this important means of conducting mercantile business, as to well nigh destroy its effectiveness now so generally understood, employed and recognized."

In Seven Hills Chautauqua Co. v. Chase Bros. Co., etc., 26 R., 334, a drummer of the appellee entered with appellant into the following writing for the sale of certain trees:

"For and in consideration of $125 Chase Bros. Co., Rochester, N. Y., party of the first part, agrees to sell, with the provisions set forth below, to the Seven Hills Chautauqua Co., party of the second part, five hundred Carolina poplar trees F. O. B. Owensboro, Ky., described as follows: Trees to be uniform in size, first grade, not less than twelve feet long, nor three inches in diameter at base, and to be three years of age. Party of first part agrees that all trees dying shall be replaced by live trees at the end of twelve months. The party of the second part, Seven Hills Chautauqua Co., agrees to pay party of the first part $100.00, the amount named as consideration, upon the delivery of said trees in accordance with the terms of the above contract. The party of the first part, Chase Bros. Co., agrees that party of the second part, the Seven Hills Chautauqua Co., shall retain $25.00 of the consideration above named for seven months, as guarantee of the fulfillment of the terms of this contract.

"October 30, 1902.

"Chase Bros. Co.,
"By C. V. Barnes, Agent.
"Seven Hills Chautauqua Co.,
"By W. G. Archer, Super."

Appellee, upon receiving a copy of this writing from its drummer, refused to approve the contract contained

therein and immediately gave notice thereof and returned the writing to appellant. The appellant brought an action against it to recover damages for its alleged violation of the contract. The answer of appellee denied the authority of the drummer to sign its name to the contract or to agree for it to ship or deliver the trees therein contracted for; alleging that these facts were known to appellant and that the limit of the drummer's authority was to solicit and transmit the order or contract to it for its acceptance or rejection, which was also known to the appellant. It was held that appellee was not bound by the contract made by its drummer. The opinion cites the cases of Charles Brown Grocery Co. v. Beckett, etc., and John Matthews' Apparatus Co. v. Renz & Henry, *supra*, and quotes with approval the rule announced therein, viz.: "In the absence of special authority to bind his principal the drummer can merely solicit and transmit the order, and the contract of sale does not become complete until the order is accepted by his principal."

In Courtney Shoe Co. v. Curd & Son, 142 Ky., 219, it appears that a traveling salesman for the Courtney Shoe Company took two orders for shoes from Curd & Son which were mailed to the Courtney Shoe Company by him. The Courtney Shoe Company then wrote Curd & Son a postal card saying that the order was at hand and would receive prompt and careful attention, also thanking them for it. On the same day the house rejected the order and sent it to the drummer to return to the customer, on the ground that he had no authority to make the sale. The drummer returned the letter to the house, asking the house to send it to Curd & Son. This the house did, eight days after the order was received. Curd & Son insisted that their order had been accepted, but we held that there was no acceptance of the order and that the house was not liable in damages for refusing to fill it. The opinion cited with approval the cases of Charles Brown Grocery Co. v. Beckett, 22 R., 393; Matthews Apparatus Co. v. Renz & Henry, 22 R., 1528; Seven Hills Chautauqua Co. v. Chase Bros. Co., etc., 26 R., 334.

Ordinarily the rule is that the construction of a writing is for the court. If its meaning is ambiguous and by reason thereof doubtful, or it is to be interpreted in the light of a usage of trade which gives its words a

peculiar instead of a popular meaning, parol evidence may be admitted to show its meaning; and it is only when parol evidence is admissible to explain a writing that its meaning may be submitted to the decision of the jury. There is no ambiguity in the writing given by appellant's drummer, Chandler, to appellee. Its language is altogether consistent with the theory that it was merely intended as an order for the flour appellee wished to purchase, or to evidence a conditional sale, that is, a sale if approved by appellant when the order for the flour reached it, or within a reasonable time thereafter. This interpretation of it is imperatively required, in view of the total absence of any evidence tending to show that Chandler had authority to make a sale of the flour without the approval of appellant. Furthermore, it is apparent from the evidence as to previous purchases of flour made by White, appellee's president and manager, from appellant through Chandler, that White knew that the authority of the latter as a drummer in appellant's employ, went no further than to solicit orders for flour or to make sales thereof, subject to its approval. The principal is never bound where the person dealing with the agent knows, or has reason to know, that the agent is exceeding his authority. In dealing with a drummer one cannot assume that he has implied authority to make an absolute sale of the article or commodity he handles; but must know that, in the absence of special authority to do so, he can do no more than merely solicit and transmit the order and leave to his principal the right to accept or reject it; the approval of the latter being necessary to complete the sale. Appellee has not shown that appellant's drummer, Chandler, had special authority to bind his principal, and, in the absence of such showing, the writing given its president and manager by Chandler is no more evidence of a completed contract than would be a mere order for the flour written in the form customarily employed by drummers in such transactions; and in no event can it be considered as anything more than a tentative sale, which could not become binding unless accepted or approved by appellant, which was never done.

This being true, the trial court should, as requested by appellant, have given the peremptory instruction directing a verdict for it. The above conclusion renders

unnecessary consideration of the remaining grounds urged by appellant for a reversal.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial and such further proceedings as may be consistent with the opinion.