LEON G. VOORHEES, Appellant, v. W. A. BAIER et al., Appellees.

**VENDOR AND PURCHASER:** Rescission by Purchaser—Failure to 1 "Substantially" Perform. A contract for the erection of buildings is *substantially* performed only when the omissions or variations from the contract are (1) in good faith, (2) inadvertent, (3) unintentional, (4) do not impair the structure as a whole, (5) are capable of being remedied without doing material damage to other parts of the building, and (6) are such as may be fairly compensated for by an allowance of damages. Evidence reviewed, relative to the plea of substantial performance in the erection of certain buildings, and held to show affirmatively that the contract had not been substantially performed, and that, as a consequence, the door was open for a rescission by the purchaser.

**CONTRACTS:** Construction—Divisibility. A contract which provides 2 that the owner of land will erect certain described buildings on the land, and that another party will thereafter, at a named time, buy the land at a stated price, is an indivisible contract.

**VENDOR AND PURCHASER:** Rescission by Purchaser—When Purchaser 3 Not in Default. A purchaser is not in default for the fail-

ure to make payments at a specified time; when at said time the vendor is in default as to a prior and precedent matter.

**VENDOR AND PURCHASER:** Rescission by Purchaser—Offer to Allow Damages. A purchaser who has rightfully rescinded because of the failure of the vendor to substantially perform, may not have his rescission defeated by the vendor's offer *to allow damages for the nonperformance.*

**VENDOR AND PURCHASER:** Rescission by Purchaser—Status Quo. The principle that a rescission must be accompanied by a restoration of the *status quo* manifestly has no application when the party rescinding never received *anything* under the contract.

*Appeal from Cass District Court.*—O. D. Wheeler, Judge.

DECEMBER 15, 1922.

Suit on promissory note. The defendants filed a counterclaim to recover the purchase price paid on a contract for the purchase of land entered into with plaintiff, which defendants claim they had rescinded. The court allowed the amount of said counterclaim, and offset the same against the amount due plaintiff, and directed a verdict in favor of the plaintiff for the balance. Plaintiff appeals.—*Affirmed.*

*E. S. Holton* and *Lynch & Byers,* for appellant.

*Swan, Clovis & Swan,* for appellees.

Faville, J.—Appellant is a banker. On October 4, 1920, the appellees borrowed $5,100 from appellant and gave their promissory note therefor, due six months after ·date. The suit is brought to recover the amount due on said promissory note. The appellees in their answer admit the execution of the note, and that they owe the amount due thereon, subject to their rights under a counterclaim.

On October 11, 1920, the appellees, by written contract, purchased from the appellant and one Faulkner a certain farm, for the agreed price of $42,400, upon which contract they paid, at the time of the execution thereof, the sum of $4,500. The bal-

ance was to be paid in deferred payments. The said contract contained the following provision:

"The first parties agree to erect on premises dwelling house like the one on farm occupied by C. Buckner; also, barn 32x46 feet and chicken house similar to ones on farm now occupied by them."

By their counterclaim, the appellees set up said contract, and allege that the appellant failed to comply with the terms of said contract in the erection of the barn and dwelling house, as provided therein, and that, on the 31st day of March, 1920, the appellees had rescinded said contract. Appellees seek, by said counterclaim, to recover the initial payment of $4,500 made under said contract.

The case turns on the question as to whether or not the appellant substantially complied with the terms and provisions of the said contract in the erection of the house and barn which he and Faulkner contracted to build upon the premises sold to the appellees, and whether the appellees had a right to rescind said contract and recover the initial payment.

The court overruled appellant's motion for a directed verdict, and all errors urged by appellant inhere in this ruling.

By the terms of the contract, the appellant and Faulkner undertook to erect two buildings upon the farm that had been sold to the appellees, and it is assumed that this was to be done before the date when appellees were to have possession, which was March 1, 1921. The specifications with regard to the buildings that were to be erected are somewhat general. The appellant agreed to erect "a dwelling house like the one on the farm occupied by C. Buckner." The provisions with regard to the barn were that it was to be "a barn 32x46 feet and chicken house similar to the ones on the farm now occupied by them [appellees]."

We are at once confronted with the question as to whether or not, under the evidence, the appellant substantially complied with the requirements of the contract in the erection of the house or barn, or whether the discrepancies were trivial and inconsequential in character.

Various discrepancies are pointed out and relied upon, and there is little, if any, dispute in the record in regard to the

manner in which the buildings were constructed. It appears
from the evidence that the house was to be constructed "like the
house on the C. Buckner farm." One matter complained of is
with regard to the construction of the foundation of the house.
It appears from the evidence that the pattern house on the Buck-
ner place was placed on a foundation that consisted of about a
foot of cement at the bottom in a trench. On top of this were
placed two building blocks, and on top of the blocks were from
three to five layers of brick, and on top of these brick, more
building blocks. The foundation in the constructed house was
built by digging a trench and putting in "enough cement in
there to level it off; nothing but mortar—laid in, to lay the
bricks on." On top of this were placed the building blocks,
and bricks were placed thereon. At one place in his testimony,
appellee said, referring to the foundation of the constructed
house, "It had a foundation of cement about a foot." Appellant
argues that this testimony shows that the cement of the con-
structed house was a foot deep; but the subsequent examination
of this witness disclosed that "there was just enough. They had
dug a trench and put in enough cement in there to level it off."

The kitchen of the pattern house was 9x13½. The kitchen
of the constructed house was 9½x11 feet 7 inches. Complaint
is made by appellee that, because of the difference in the size of
the kitchen, it was difficult to place a stove therein so that the
oven door would not interfere with the door of the kitchen. The
chimney in the pattern house went through the middle of the
roof, while in the constructed house it was placed on the side
of the roof. In the pattern house, there was a place for cup-
boards in the kitchen, but it appears from the evidence that
there was no such room for cupboards in the kitchen in the con-
structed house. The back porch in the pattern house was 8 feet
10 inches by 14 feet. The back porch on the constructed house
was 8 feet by 14 feet. It appears that the floors in the con-
structed house were not scraped and finished as well as the
floors in the pattern house, but the evidence is not very con-
clusive on this question. It appears that in the pattern house
the kitchen was in the corner in the front on the house. In the
constructed house, it was placed in the corner in the rear of
the house.

In the pattern house, there was a storeroom which opened off the kitchen. In the constructed house, this storeroom was in the front of the house, and opened off the living room, and was some distance from the kitchen.

There is a claim made that the changes in the constructed house were made at the suggestion and request of the appellees; but we do not find sufficient in the record to sustain the contention that the appellees are in any way estopped to assert their claim that there was a substantial difference in the construction of the two houses, if such difference in fact existed.

As to the barn, the contract called for a barn 32x46 feet. The barn constructed was 32x44 feet. The evidence shows that the main part of the pattern barn was frame, and the corner posts formed what is called a "frame barn." Between the corner posts there were poles. The poles were on the shed part of the barn, and the balance of the barn was of frame construction. The constructed barn was made with poles set in the ground, and the plates were nailed on top, spiked with top girts on the outside, and braces nailed up and down. It is what is known as a "pole barn." The pattern barn was 8 feet high to the plates. The constructed barn was 7 feet high to the plates. The pattern barn contained a granary in the barn, 10x16½ feet. The constructed barn contained no granary whatever. The stalls and mangers of the pattern barn were constructed with 2x12's set in between 2x6's, and the uprights were set up and down, and the plank was set in between. In the constructed barn, the stalls were made by a 2x6 scantling set into the ground, nailed to the joists above, and a board an inch thick and 12 inches wide was nailed to the outside of the 2x6, one on each side. The mangers were constructed of inch lumber, with the exception of the tie pole, and that was a 2x4 (2 inches thick and 4 inches wide). The pattern barn had a plank floor set on 2x8 joists. It was 8 feet 10 inches in the clear. The constructed barn had only a dirt floor, and was 7 feet in the clear. The pattern barn contained a box stall, but there was no box stall in the constructed barn. The pattern barn appears to have been constructed with the walls solid upon the ground; while in the constructed barn there was an 18-inch open space on the west and north sides. It appears that the windows in

the pattern barn were so installed that they would slide back and forth; while the windows in the constructed barn were stationary.

I. If the appellant substantially complied with the terms and provisions of the contract in the erection of the house and barn, the appellees would not be entitled to rescind the con-

1. VENDOR AND PURCHASER: rescission by purchaser: failure to "substantially" perform.

tract. Or, to put it another way, the appellees would not be entitled to exercise the right of rescission because of the failure on the part of the appellant to comply with the contract in the erection of the buildings strictly and literally: that is to say, trivial and inconsequential departure or omissions in the construction of the house and barn would not entitle the appellees to rescind said contract; but their remedy, if any, would be in damages. The general rule is thus stated:

"A breach by the vendor of material provisions of the contract entitles the purchaser to rescind. But in order to justify rescission, there must be a breach of some material provision. A slight or unimportant partial failure of the vendor to comply with the terms of the contract furnishes no ground for rescission." 39 Cyc. 1404.

This rule has been recognized by us in *Gray v. Central Minn. Immigration Co.*, 127 Iowa 560, in which we said:

"It may readily be conceded that a vendee may not rescind the contract and recover the purchase money paid upon a slight or unimportant partial failure of the vendor to comply with the terms thereof."

In *Littell v. Webster County*, 152 Iowa 206, we quoted with approval from 9 Cyc. 603 the following:

"'Substantial performance,' as defined by the cases, permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price. So much is allowed in building contracts because of the hardship to the contractor if slight, unintentional deviations should bar his recovery."

We have set out practically all of the differences in con-

struction between the two sets of buildings of which complaint
is made. Appellant insists that he offered to compensate the
appellees in a reasonable amount for the differ-
ence between the buildings as constructed and
as contracted for, and that the differences are
of such character that they can be readily compensated in dam-
ages, and that appellees were not entitled to rescind the con-
tract. It is especially urged by appellant that the contract call-
ing for the purchase of the farm involved a transaction of
$42,400, and that the differences in the construction of the build-
ings, in view of the amount involved in the entire transaction,
are trivial and insignificant, and could be compensated in dam-
ages, and therefore cannot be the basis of a right to rescind.

2. CONTRACTS:
construction:
divisibility.

Appellant was not a builder and contractor who, as such,
undertook to erect the house and barn. He was the owner of a
farm upon which there were no buildings. He undertook by his
contract to sell to the appellees the said farm in the condition
in which it would be when equipped with a new house and barn
of the kind and character described in the contract. The con-
tract was executory, and the appellant, in entering into the con-
tract, undertook to sell and convey the property on March 1st
in a certain condition. The appellees were buying a quarter
section of land with a new house and barn upon it, possession
to be given on March 1st. We do not regard that portion of
the contract which provides for the construction of the house
and barn as being so independent from the contract for the
sale of the premises as to leave the appellee with no remedy
except that of compensation for failure to perform that portion
of the contract. If the appellant had built no house or barn
whatever on the premises, under this contract, it would be a
very harsh rule that would require the appellees to accept the
premises in such a condition and look to an action at law for
compensation in damages for the failure to erect the house and
barn. The same situation, to a degree, exists where the house
and barn did not comply with the provisions of the contract to
such an extent and in such a degree that it must be held that
there was not a substantial compliance.

A careful examination of the evidence in this case satisfies
us that the house and barn, as constructed, so materially and

essentially departed from the provisions of the contract as to justify the appellees in rescinding the contract for nonperformance on the part of the appellant. We have set out the evidence at considerable length. It is quite apparent therefrom that the house and more particularly the barn were, in material and important respects, radically different from the construction required by the contract. Referring to the barn alone, the contract called for a frame barn of a certain size, containing plank floors therein, stalls and mangers of two-inch material, and a height of eight feet to the plate, and with a box stall and granary, and with the walls to the ground, so that the wind could not pass under it. Instead of this, the barn constructed is a pole barn, seven feet to the plates, with no floor in it, with stalls and mangers constructed of one-inch material, with no box stall or granary, and with the walls at places eighteen inches above the ground, and the entire barn two feet shorter than the barn contracted for. The house was also, in material respects, a departure from the house contracted to be built.

Referring to the law on this question, in *Braddy v. Elliott,* 146 N. C. 578 (60 S. E. 507), the court said:

"The rulings on this subject are very numerous and not at all harmonious, as few cases turn on greater niceties than those which involve the question as to whether a contract ought to be delivered up to be canceled, or whether the parties should be left to their legal remedies."

In *Buena Vista Co. v. McCandlish & Clowes,* 92 Va. 297, it appeared that the vendor sold to the vendee 14 acres of land and a hotel then in process of construction, for the sum of $125,000, of which $5,000 was paid in cash, with $20,000 to be paid when the hotel was completed, and the residue in annual installments. The contention was that the hotel was not completed according to the plans and specifications agreed upon. The court said:

"[It is a] very sound proposition of law that no man can be compelled to take and use one thing when he has bargained for another. Nor will he be permitted to decline to take what he has fairly contracted for, if the other party has substantially complied with the contract."

It was held that, where the vendor had failed in important

and substantial particulars to comply with the contract as to the character of the buildings to be built, the vendee could rescind, and recover the portion of the purchase price which he had paid.

In *Ihrke v. Continental L. Ins. & Inv. Co.*, 91 Wash. 342 (157 Pac. 866), the vendor sold a 5.68-acre tract of land, under written agreement to plant fruit trees thereon and prune, spray, cultivate, and care for them for four years, replacing those that should die. The cash payment was made under said contract, the balance to be paid in installments. It was contended that the clause in the contract relating to the planting of the trees is an independent covenant, a breach of which is not ground for rescission. The court held that the covenants were mutual and dependent, and said:

"The very contract is to convey a tract of land with a bearing orchard, which was to be planted and matured prior to the time the last of the payments were due. There was no separation in regard to the consideration. The land with the orchard was to be conveyed as a whole for the one price, and there is no means of determining what part of the consideration was to be paid for the land and what part for the orchard."

See, also, *Tennant Land Co. v. Nordeman*, 148 Ky. 361 (146 S. W. 756); *Laser v. Forbes*, 105 Ark. 166 (150 S. W. 691); *Shultz v. Redondo Imp. Co.*, 156 Cal. 439 (105 Pac. 118); *Gray v. Central Minn. Immigration Co.*, supra; *Miller v. Beck*, 72 Ore. 140; *Aurand v. Perry Town Lot & Imp. Co.*, 178 Iowa 262, 268; *Walker v. Harbor Business Blocks Co.*, 181 Cal. 773 (186 Pac. 356); *McMillan v. American Suburban Corp.*, 136 Tenn. 53 (188 S. W. 615).

In this case, the contract was executory. The covenants were mutual and dependent. There was no separation in regard to the consideration. It is one and indivisible. The departure from the terms of the contract in the erection of the buildings was substantial and material, and because thereof the appellees were entitled to a rescission of the contract and to a return of the portion of the purchase price paid, and were not required to resort to compensation in damages.

II. It is urged that the appellees were not entitled to rescind the contract because they were in default in not having

paid or tendered payment of the balance of the purchase price.

On March 1st, the appellant had already breached the contract by the failure to comply with the terms and conditions of the contract in the erection of the buildings specified. Appellees were not in possession of the premises, and under the record, at no time took possession thereof. On March 7th, the appellant served notice upon the appellees of intention to declare a forfeiture of the contract. On March 31st, the appellees served written notice on the appellant of their rescission of the contract. The appellant was in no condition to perform, because he could not convey the property with the buildings erected thereon according to the terms of the contract. True, there is testimony tending to show that the appellant offered to compensate the appellees for the difference between the value of the buildings as erected and their value according to the contract. But appellees were not put in default by this offer, nor would it bar them of their right to rescind the contract. In a case such as is here presented, the law does not require that the purchaser shall pay the balance of the purchase price or tender the same before he can rescind the contract and seek the recovery of the payment already made. The breach on the part of the vendor is the basis of the right of the vendee to rescind and to recover the purchase price. In a situation such as we have presented in this case, where the vendee had received nothing whatever by way of deed, possession of the property, or otherwise, it was not incumbent upon him, upon the discovery of the vendor's breach, to perform either by paying the balance of the purchase price or by tendering the same, before he could avail himself of the right of rescission. He acted promptly in the matter, and by his notice advised the appellant fully of the basis of his rescission. As applied to the facts in this case, nothing more than this was required.

III. Appellant argues that appellees could not rescind without restoring the *status quo*.

There was nothing, under the circumstances, required on the part of the appellees to restore the *status quo*. They had received nothing whatever under the contract,—neither title nor

5. VENDOR AND
PURCHASER:
rescission by
purchaser:
status quo.

possession. They had nothing but the outstanding, unrecorded executory contract, upon which the appellant had himself served notice of forfeiture. The situation did not call for any affirmative act on the part of the appellees before the service of their notice of rescission of the contract. They had nothing to restore before they made rescission. *Wilhelm v. Fimple*, 31 Iowa 131; *Primm v. Wise & Stern*, 126 Iowa 528; *Aurand v. Perry Town Lot & Imp. Co.*, supra.

We have examined all of the errors assigned and argued by the appellant. They all inhere in the matters covered by the foregoing discussion.

The judgment appealed from is—*Affirmed*.

Stevens, C. J., Evans and Arthur, JJ., concur.