## McGregor v. Louisville & Nashville Railroad Company et al.

(Decided June 24, 1932.)

GORDON & GORDON & MOORE for appellant.

WHITE & CLARK and C. J. WADDILL for appellees.

OPINION OF THE COURT BY JUDGE WILLIS.—Affirming.

Ernest McGregor sued the Louisville & Nashville Railroad Company to enforce his seniority rights as a telegraph operator. He alleged that he had been employed by the defendant about the year 1910 and worked as a telegraph operator until 1920, when he was transferred to night duty as yardmaster at Atkinson, Ky. He continued as night yardmaster at the point named until June 1, 1930, when he was relieved from duty. He then demanded a position as telegraph operator, and was given an assignment, serving in that capacity until July 30, 1930. He was then relieved of that duty at the instance of other employees in the telegraphic department, who insisted that McGregor had lost his seniority rights in the telegraphic department by engaging in service in a different department.

An intervening petition was filed by S. E. Bryant, A. W. Davis, H. A. Jones, and the Order of Railroad Telegraphers seeking for themselves and for the class of employees that were denying the rights claimed by McGregor, to defend the action and to defeat the demand of the plaintiff. The decision of the circuit court was against McGregor, and he has prosecuted an appeal.

The soundness of the decision depends upon an interpretation of several contracts made by the railroad with its telegraphic employees as a result of collective bargaining. Gregg v. Starks, 188 Ky. 834, 224 S. W. 459; Aden v. L. & N. R. Co. (Ky.), 276 S. W. 511. The first contract, as amended, and which was in effect in 1920 when McGregor became night yardmaster, provided:

"(a) Employees accepting transfer to other class of service than covered by this agreement, except to official positions or supervisory agencies, shall forfeit their seniority after having filled such positions more than six months."

Provision was made in the rule preserving the seniority rights of employees accepting official positions

or supervisory agencies when they should return to service in the telegraphic department.

The agreement mentioned was superseded in 1922 by a new agreement which enlarged the scope of the rule. It permitted ''employees accepting positions of train dispatchers, supervisory agents, or official positions with the Louisville & Nashville Railroad Company, or the Order of Railroad Telegraphers,'' to continue to accumulate seniority in their home districts.

In 1924 a new contract was negotiated with a provision that ''employees accepting subordinate official positions'' also were permitted to accumulate seniority. Finally in 1927 still another change was made, so that the rule then stood:

> ''Employees accepting subordinate official, or official positions with the Louisville & Nashville Railroad Company or the Order of Railroad Telegraphers, will be considered on leave of absence while so engaged when their duties so require, and will continue to accumulate seniority on their home districts.''

The yardmasters were governed by rules in the nature of a contract. They classified yardmasters and assistant yardmasters as subordinate officials. But these rules were first adopted in 1923.

It is contended that the changes in the contract of the telegraphers, which enlarged the class of persons whose seniority rights were preserved while temporarily out of the telegraphic service, inured to the benefit of McGregor, although he was then in another branch of the service. It is argued that, even though McGregor may have lost his status in the telegraphic department under the contract in force in 1920 after he had served as much as six months as night yardmaster, he was fully restored thereto by the contracts subsequently made. It is obvious that the rights of McGregor must be determined by the terms of the contract in force at the time he transferred from the telegraphic department.

His rights were derived from the contract, and such rights, in the absence of a provision to the contrary in the contract itself, would not be enlarged or curtailed by subsequent changes. Our attention has not been called to any provision in the contract that would entitle McGregor to the benefit of the later contracts, or that would subject him to any disadvantage if the later con-

tracts had been narrowed in their scope. His rights continued under the old contract until he acquired a new status in the department to which he had transferred. Clearly he was one of the class governed by the contract of 1923 which expressly included yardmasters and assistant yardmasters. The contract respecting the telegraphers did not include employees embraced in a separate contract for the benefit of a different class of employees. The contracts were designed to protect the seniority rights of employees, and did not apply to officials who had no seniority rights.

The question, then, is whether the contract in force in 1920, at the time McGregor transferred from the telegraphic department, preserved his seniority rights. The answer depends upon a definition of the term "official position," as used in the contract. If the position of night yardmaster was an "official position," as used therein, the rights of McGregor were expressly preserved, and he was entitled to be restored to his position in the telegraphic service. McGregor testified that he was told by a superior that his position was an official one. But evidence was adduced to the effect that an "official position," as used in the contract, did not embrace such a status as that occupied by a night yardmaster.

In matters of this character it is competent to prove by witnesses familiar with the subject the meaning of words having a peculiar significance in the particular connection in which they were employed. 22 C. J., p. 549, sec. 649; Nolin Milling Co. v. White Grocery Co., 168 Ky. 417, 182 S. W. 191; Tenant Land Co. v. Nordeman, 148 Ky. 361, 146 S. W. 756.

Apart from the evidence, the words "official position" with a railroad company ordinarily would not suggest that a night yardmaster, or yardmaster, was intended to be embraced. Kutil v. Floyd Valley Mfg. Co., 205 Iowa 967, 218 N. W. 613. And it is clear from the evidence that the contract did not refer to such positions as yardmaster.

The finding of the circuit court upon the facts was supported by evidence, and the conclusion of law derived therefrom was sound.

It is insisted that the court erred in permitting the intervention of Bryant, Davis, Jones, and the Order of Railroad Telegraphers for the purpose of defending the

action. The individual interveners were officers of the brotherhood, and they were interested in the construction of the contract involved. The order and the officers represented persons whose rights would be displaced by the success of McGregor. In such a situation, the court had a right to hear the interveners, and the rules of practice were designed to cover the case. Civil Code of Practice, sec. 25; Payne v. McClure Lodge No. 539 (Ky.), 115 S. W. 764.

The appellant, in any event, was not prejudiced, since the railroad company adopted and insisted upon the same defenses interposed by the interveners to defeat the plaintiff.

We are constrained to the conclusion that the circuit court committed no reversible error in its finding of facts or in its conclusions of law.

The judgment is affirmed.