### Saulsberry v. Coopers International Union, Thomas McManus and Ed. Lineback.

(Decided February 27, 1912.)

### Appeal from Kenton Circuit Court (C. C. L. & E. Division).

1. Cooper's Union—Action Against—Removal of Stamp from Shop—Joinder of Representatives of Union.—In an action against a Cooper's Union and two of its representatives for damages for the closing of plaintiff's shop on the ground that he failed to comply with the demands of the union, Held, That a man's labor is his own, he has the right to dispose of it under the best terms that he can secure, and when one is in the employ of another under a contract and that contract has expired, neither party is under any obligation to continue in the employment except upon terms satisfactory to him, and no ground of complaint is offered either employer or employe for refusing to continue longer the contractual obligations.

2. Same—Right of Laborers to Organize.—The right of laborers to organize for protection, in the way of securing better wages, shorter hours and improved facilities whereby their condition is bettered, has been many times before the courts of this country, and such right has been uniformly upheld.

3. Same—Union—Members of Bound by its Rulings.—While some of the employes of appellant may have been satisfied with the old contract, being members of the union, they were bound by it and its rulings and judgment so long as they remained members of it.

4. Same.—The representatives of the union in attempting to procure for the union a better contract and in refusing to sanction the men's continuance under the old contract, were guilty of no act of violence. They simply declared a strike because they could not secure for the union a desirable contract and this they had the right to do, and no ground of injunctive relief is presented by appellant.

5. Same.—A labor organization cannot be required to enter into a contract with one desiring the services of its men upon terms not acceptable to it.

MYERS & HOWARD for appellant.

COGAN & WILLIAMS and HOWARD N. RAGLAND for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

E. G. Saulsberry is a manufacturer of beer cooperage in Covington, Kentucky. In March, 1910, he entered into a contract with the Coopers International Union, No. 159 Cincinnati, Ohio, by the terms of which said Union was to furnish him union labor to run his business for one year at the stipulated price of thirty-five cents per hour for a day's work consisting of nine hours. The Union supplied his shop with a stamp marked "C. I. U. No. 52," which was to be used on all the cooperage manufactured at his factory. This stamp was under the control of a member of said Union in his employ, known as a "monitor." Under this agreement the business was conducted during the life of the contract. About the time it terminated—just before or just after—representatives of the Union notified him that they would not work longer under the terms of the old agreement, and that if he wanted to continue his business as a union shop he would have to pay an advance in wages and accept shorter hours for a day's work. The new agreement sought by the representatives of the Union provided for an eight hour day at forty cents per hour. Saulsberry refused to accede to this demand on the ground that other cooperage plants in that locality had made contracts with the Union under more favorable terms, and so notified the representatives of the Union. They thereupon took possession of the stamp and notified the employes that they were "out of a job." It is a rule of the Union that none of its members can work in a shop not supplied with a stamp, and hence the removal of the stamp effectually closed this shop to union labor. Conceiving that he was being unjustly discriminated against to his damage, Saulsberry instituted a suit, in which he sought, either to compel the union to return to him the stamp for use in his business, or else to compel it to make a contract with him on the same terms upon which it was furnishing labor to his competitors in that vicinity. Two of the representatives of the Union, termed "walking delegates," were made parties to the suit. No defense was made for the Union; but, the two defendants, Lineback and McManus, answered, and, in addition to specifically denying the charge that they had conspired with any of plaintiff's competitors to injure him in his business, pleaded affirmatively that, as the representatives of the Union,

they had simply demanded better pay and shorter hours for the men before they would enter into any further contractual relation with plaintiff, and that this demand having been refused, they took the stamp from the shop and notified all of the employes who were members of the Union that they could no longer work, as the factory was not entitled to the use of the stamp. They further pleaded that the stamp was the individual property of the Union. The affirmative matter in the answer was traversed in the reply. Upon the issues joined and proof taken the case was submitted for judgment. The chancellor was of opinion that plaintiff had failed to make out a case, and dismissed the petition. Plaintiff appeals.

The evidence shows that, at the time the dispute arose, the contract between plaintiff and the Union had expired, and while some of the men in plaintiff's employ were willing to continue to work under the old contract, the Union withheld its consent for them to do so; and because of plaintiff's inability to make a new contract with the Union he was compelled to close his shop, and it had, up to the date of the submission of the case, remained closed. He has a large amount of money invested in his business, and, as it appears he can not dispose of his output unless it bears the stamp of the Union, he has and must necessarily sustain a serious loss. It likewise appears that others of his competitors have contracts more favorable than that which the Union was exacting of him. On this state of facts, what are the rights of the parties?

A man's labor is his own, and he has the right to dispose of it upon the best terms he can secure; if one to whom it is offered or by whom it is desired is unable or unwilling to pay the price demanded for it, we have presented simply a case where the parties to a proposed contract can not agree as to terms. So too, when one has been in the employ of another under a contract, and that contract has expired, neither party is under any obligation to continue in the employment except upon terms satisfactory to him, and no ground of complaint is afforded either employer or employe for refusing to continue longer the contractual obligations. This principle is universally recognized. The influences which actuate the employer in discharging the servant, or the servant in quitting the employ of the master, are not a proper subject of inquiry. If they possess the right to terminate the employment, they may exercise it although the

one so doing may know it works inconvenience, if not a positive injury, to the other. The exercise of a legal right by one in a proper manner will not be denied although damage or loss may result to another as a necessary consequence thereof. If, instead of a labor union, this was a controversy between plaintiff and an individual employe, and there was no contractual relation requiring him to continue in plaintiff's employ, he could refuse to work longer except upon such terms as were acceptable to him, and plaintiff would be powerless to compel him to work and would have no just cause of complaint because he quit. If the same principle applies to a union, which is but an organization of men for mutual benefit and protection, the plaintiff is remediless, even though his business is ruined.

The right of laborers to organize for protection, in the way of securing better wages, shorter hours and improved facilities whereby their condition is bettered, has been many times before the courts of this country, and such right has been uniformly upheld. In the case of Hopkins v. Oxlay Stave Co., 28 C. C. A., 99, 83 Fed., 912, this right is thus stated for the court by Judge Thayer:

"The courts have invariably upheld the right of individuals to form labor organizations for the protection of the interest of the laboring classes and have denied the power to enjoin the members of such associations from withdrawing peaceably from any service, either singly or in a body, even where such withdrawal involves a breach of contract."

Such right is not disputed by counsel for appellant, but it is argued that the men did not want to cease working; they were satisfied with the old contract and wanted to continue under it. Undoubtedly some were, but, being members of the Union, they were bound by it and its rulings and judgment so long as they remained members thereof. The old contract had been made by the Union. The Union alone was clothed with power to contract for its members, and the contract, if made at all, had to be made by the Union. Hence, the wish or will of individual members can not be considered in determining the rights of the parties to this controversy. If the Union had a right, through its representatives, to contract, which is not denied, then the desire of individual members can not be taken into consideration at all, and it is immaterial whether they were satisfied or dissatisfied with the proposed arangement. The Union was willing

to make a contract, but it demanded one more favorable in terms for the men than the old contract. Should it be enjoined from doing so because some of the members of the Union were satisfied with the old contract? Undoubtedly, if the officers of the Union are clothed with power to represent and speak for it, this right can not be taken from them or abridged, except by the Union itself. It is not a matter for judicial determination at the instance of any one save the Union. It is not denied that Lineback and McManus spoke for and represented the Union, and, as said by Judge Taft in Thomas v. Railway Company, 62 Fed., 803, in dealing with the rights and powers of officers and representatives of Unions to advise and direct the men,

"They have the right to appoint officers to advise them as to the course to be taken by them in their relations with their employer. They may unite with other unions. The officers they appoint, or any other persons to whom they choose to listen, may advise them as to the proper course to be taken by them in regard to their employment, or if they choose to repose such authority in any one, he may order then on pain of expulsion from their union, peaceably to leave the employ of their employer, because any of the terms of their employment are unsatisfactory."

We take it that Lineback and McManus were acting clearly within their right in attempting to procure for the Union a better contract than it theretofore had and in refusing to permit or sanction the men to continue longer in plaintiff's employ under the old contract. They were guilty of no act of violence, but simply, in effect, declared a strike because they could not secure for the Union such a desirable contract. The result of their action was that all of the Union men in plaintiff's employ quit work. It was a concerted action. Had they the right to do so?

This precise question was raised in the suit of the Union Pacific Railroad Co. v. Ruth, 120 Fed., 114, the court there saying:

"The defendants acted within their rights when they went out on a strike. Whether with good cause, or without any cause or reason, they had the right to quit work for the Union Pacific Railway Company, and their reasons for quitting work were reasons they need not give to any one. And that they all went out in a body by agreement or pre-concerted arrangement, does not mili-

tate against them or affect this case in any way, such rights are reciprocal and the company had the right to discharge any or all of the defendants, with or without cause, and it can not be inquired into as to what the cause was.''

As the Union at that time had no contract with the plaintiff, he had the undoubted right to discharge all the men in his employ at once, without notice or warning,; and so the men had the right to quit; and when they did so they were not required or called upon to give or assign any reason therefor.

The stamp belonged to the Union, and they took it away when they quit plaintiff's employ. It was the sign by which the business world was advised that the goods manufactured were union made, and plaintiff had no right to its use except when his goods were made by union labor. The stamp could not lawfully be used by him except upon goods made by union labor. So his real complaint is not that the stamp was removed, but that the Union refused to contract with him upon terms which he was willing to make. To grant the relief sought would be to compel the Union to contract with him upon the same terms it had with other manufacturing concerns engaged in like business in that locality. We have been unable to find any authority supporting such contention. In effect it would be the substitution of the judgment of the court, exercised through its mandatory processes, for the will of the Union. It would take away from the Union the right to contract for itself, and open the door for needless litigation between employer and employe, and make of the court an arbiter in advance of all questions of wages or compensation for labor. If the employer could compel the employe to contract with him upon terms acceptable to him, the employe could, with equal propriety, compel the prospective employer to hire him upon terms agreeable to him and as favorable and as high as other employers were paying for like services. The proposition falls from its own weight. The relief sought can not be granted.

No ground for injunctive relief is presented. The sum and substance of appellee's offense is that Lineback and McManus, being unable to agree with plaintiff on a scale of wages for the members of the Union, ordered a strike, and took from plaintiff's shop the stamp—the property of the Union. They offered no violence whatever. They threatened the destruction of no property.

They did not do anything in any way, shape or form cal-culated to interfere with plaintiff in procuring other labor; but simply stood upon their rights and refused to labor upon terms not acceptable to them. The inability of plaintiff to make a contract for this union labor has undoubtedly worked a hardship upon him; but this is his misfortune rather than appellees' fault. When he first built and occupied his plant, if he had been unable to make a contract with the Union at that time he would likewise have sustained a loss, but such loss could not justly be charged to the Union. And appellant has no better right now to complain of the Union then he would have if he had been unable to effect an agreement with them as to the scale of wages the year before.

There is an intimation in the pleading, if not a positive charge, that the failure of appellees to contract with appellant was the result of a conspiracy, entered into between the walking delegates, Lineback and Mc-Manus, and appellant's competitors, for the purpose of destroying his business. We find no substantial evidence in the record to justify or support this charge. But, even if it were true, it would be of no avail, for since appellees had the right to cease laboring for appellant, it is immaterial what moved them to exercise this right. Appellant is furnished no ground of complaint because the members of the Union ceased to work for him.

If appellant was seeking to recover damages from his competitors a different question would be presented, if it was shown that they had conspired to destroy his business and, as a result of such conspiracy, deprived him of the benefit of the labor of his employees. They might be answerable in damages for such injury. But that question is not here. The simple question presented by this record is, can a labor organization be required to enter into a contract with one desiring the services of its men upon terms not acceptable to it? The lower court held that it could not; in that conclusion we concur. Judgment affirmed.

Whole court sitting.