## Louisville Ry. Co. v. Louisville Area Transport Workers Union et al.
## Transport Workers Union Of America, CIO, et al. v. Louisville Area Transport Workers Union.

February 10, 1950.

Rehearing denied April 28, 1950.

William H. Field, Judge.

Bullitt, Dawson & Tarrant, John E. Tarrant, Thomas S. Dawson and Gerald Kirven for appellant Louisville Railway Co.

W. S. Heidenberg and Raymond F. Bossmeyer for appellants Transport Workers Union of America, CIO, and Transport Workers Union, Local 176, and others.

Herbert H. Monsky and George R. Ambro for appellee Louisville Area Transport Workers Union and others.

STANLEY, COMMISSIONER—Affirming.

This is a declaratory judgment proceeding involving the rights of different labor unions purporting to represent the employees of the Louisville Railway Company, hereinafter referred to as "Company." The Company's principal interest in the controversy is to have determined which organization is entitled to receive dues checked off by it.

The three voluntary associations represented in this suit are: (1) Transport Workers Union of America, CIO, hereinafter referred to as "National;" (2) its affiliate, Local 176, Transport Workers Union of America, hereinafter referred to as "Local 176;" and (3) Louisville Area Transport Workers Union, hereinafter referred to as "Louisville Union." The court below decided that the Louisville Union was the present bargaining agent of the Company's employees and was entitled to receive union dues checked off by it subsequent to September, 1949.

Local 176 had been the local bargaining agent for the Company's employees since 1946. Apparently, in June, 1949, certain differences were developing between it and National, with whom it was affiliated. At a regular monthly meeting of Local 176, held on June 14 and 15, the membership adopted a resolution authorizing its Executive Board to take necessary steps "in order to

protect our defense fund, our contract, our autonomy, our union * * *.''

On July 14 the Company entered into a contract (effective June 1) with Local 176, its "successors and assigns," whereby this union was recognized as the exclusive collective bargaining agent for the Company's employees, and the Company agreed to deduct union dues from all employees who signed authorization cards. National was not a party to this contract, although it had been in prior contracts. Shortly prior thereto the members of Local 176 had delivered to the Company written authorizations, irrevocable for a period of one year, directing the deduction of dues to be paid to the "Union."

Some time before September 2, 1949, a movement had been under way to organize the independent Louisville union. As of that date, more than 700 employees of the Company, constituting a majority of all the employees and a majority of the members of Local 176, had executed written instruments purporting to found and establish the Louisville union. These petitions authorized their representatives to make immediate demand on Local 176 to: (1) assign to the Louisville union the current collective bargaining agreement with the Company, (2) consent to the Louisville Union replacing Local 176 in all pension plan matters, and (3) substitute the Louisville union for Local 176 in all check-off authorizations. Pursuant to this demand, and in the light of the resolution of June 15, on September 2 the Executive Board of Local 176 assigned to the Louisville union all its right, title and interest in the June 1, 1949, agreement with the Company and the authorizations theretofore executed by individual employees directing the deduction of union dues, and the Louisville Union assumed the future obligations of Local 176. The nub of this case is whether or not the above assignment is valid.

It is the contention of National and Local 176 that the agreement of June 1, 1949, was irrevocable for at least one year; that these unions as recognized entities had some sort of vested rights in the contract; and that the employees could not legally withdraw from Local 176 and transfer its contract rights to a new bargaining agent.

At the outset we think it evident that National had

no independent interest in this controversy. It was not a party to the June 1 contract, and its rights, if any, can be no greater than those of Local 176. While the point is made that National has spent substantial sums in the past to organize the Company's employees, we can find nothing in the record which would substantiate a claim that it has a legally recognizable financial interest in the future dues collected from the Company's employees.

It is necessary to examine the authority of Local 176 to make the assignment of September 2, 1949. The constitution of National, under which Local 176 was organized and operated, provides that: (1) "the supreme authority in the Local Union shall be the membership of the Local Union," acting through regular meetings, and between such meetings "the Local Executive Board shall have the power and authority" to administer its affairs; and (2) majority rule shall prevail.

On June 15 the membership at a regular meeting had passed the resolution directing the Executive Board to take necessary steps to protect the Union's contract and autonomy. It appears from this resolution that the membership anticipated some possible change in its organizational status and was by majority vote reaffirming the authority of the Board to protect the membership at the local level. It was after the passage of this resolution that the latest contract was entered into between the Company and Local 176, its "successors and assigns."

On September 2, 1949, the Board, acting under its constitutional authority to administer the affairs of the local union, unanimously voted to execute the assignment agreement. At that time it had before it the written request of the majority of its members to take such action. Since the majority and the Board jointly had the sum total of all power and authority which could be exercised by Local 176, this action was clearly authorized unless it violated some independent right of Local 176 or its members.

We have been unable to find anything in this record which irrevocably ties the Company's employees to Local 176, as originally constituted. It is a fundamental principle that an employee joining a voluntary labor union for an indefinite period may resign therefrom at

will.  Braddom et al. v. Three Point Coal Corporation et al., 288 Ky. 734, 157 S. W. 2d 349.  If he may do so, he, of course, has the right to form or join another voluntary organization, or, as was done in this case, he may do these same acts simultaneously and may continue to exercise the rights gained by the old organization through the new one.  The controlling concept we must bear in mind is that a labor union is the agent of its members.  The position which National and Local 176 must take in this controversy is that the membership exists for the benefit of particular labor unions.  While as a practical matter this often seems to be so, such is not and should not be the law.  See Hudson v. Cincinnati, New Orleans & Texas Pacific Railway Company, 152 Ky. 711, 154 S. W. 47, 45 L. R. A., N. S., 184, Ann. Cas. 1915B, 98.  Certainly the authority of the agent may be revoked at will by its principals.  See note, 144 A. L. R. 454.

National and Local 176 lay some stress on the fact that the written authorizations directing the Company to deduct union dues is irrevocable for one year and insist Local 176 was entitled to these dues for that period.  We do not so interpret these instruments.  The irrevocability provision was simply an agreement by the employee with the Company that his authorization would not be withdrawn and the Company was given the right to deduct the dues for that particular period.  It was not an agreement to remain a member of Local 176. Nor can we construe its provisions as authorizing continued payment to Local 176 when its authority as bargaining agent was revoked.  Here again we must emphasize the fact that Local 176 was a going concern only so long as the majority of its membership supported it. It simply had no continuing independent rights.

The next contention of National and Local 176 is that the assets of Local 176 belong to its members, and a majority of this group could not transfer those assets to another organization to the detriment of the minority.  We must acknowledge the soundness of this legal principle.  However, as we read the record, no attempt has been made to transfer the accumulated assets of Local 176 to the Louisville union.  The assignment related to future relationships between the Company and its employees.  Dues accruing subsequently were to be checked

off, and the Louisville union was to take the place of Local 176 under the contract in all future dealings with the Company. No accrued rights of Local 176 as such, and no accrued rights of its members as such were transferred or cancelled by the assignment.

National and Local 176 finally urge that the Court erred in failing to make separate conclusions of law and fact as provided in Sec. 332 of the Civil Code of Practice. Admittedly, this was requested and not done. However, it does not constitute reversible error for the reason that there is no dispute concerning the essential facts, and for the further reason that the record would justify no finding of fact which would result in a different legal conclusion. See Gugenheim et al. v. City of Marion, 242 Ky. 350, 46 S. W. 2d 478.

The judgment is affirmed.