**HILL et al. v. UNITED PUBLIC WORKERS UNION OF AMERICA et al.**

Court of Appeals of Kentucky.

Oct. 27, 1950.

Rehearing Denied March 16, 1951.

Charles B. Zirkle, Louisville, for appellants.

Morris & Garlove, Charles W. Morris and Herbert H. Monsky, all of Louisville, for appellees.

STANLEY, Commissioner.

This is a controversy between labor unions and former members as to the authority and right to represent the employees of the Louisville Water Company for the termination of an agreement made with the employer respecting wages, working conditions, etc.

The Louisville Water Company, as one party, and the United Public Workers of America, affiliated with the Congress of Industrial Organizations, for and with its affiliate, Waters Workers Section of Local 620, as the other parties, made an agreement as of January 1, 1949, that these labor organizations should be the exclusive representative of the employees for the purpose of collective bargaining, adjustment of grievances, etc. There had been similar employer-employee relations since 1946. The 1949 contract contained this provision for continuance and termination: "This Agreement shall remain in full force and effect until January 1, 1950, and thereafter it shall renew itself for successive one (1) year periods, provided, however, that either party hereto may reopen same for one (1) year periods unless cancelled by consent of the parties, or by the procedure hereinafter set out in this section. Should either party desire to terminate or modify this Agreement at the expiration of any calendar year, it shall give notice in writing of such intention to the other party not less than sixty (60) days prior to the expiration date. * * *"

Such provision seems to be quite common in collective bargaining agreements. No notice of termination was given by the union.

The suit, filed by the unions against the Water Company and its officers, seeks a judicial declaration that the agreement was automatically renewed for 1950 and for certain other rights in relation thereto. An injunction was sought to prevent

the defendants from withholding from the union the dues which the Company had retained from the wages and salaries of its members.

Before answer, an intervening petition was filed by Lewis Hill and thirteen other persons "individually and as members of the Congress of Industrial Organizations and in behalf of all other members of said union having and holding interests in common." They state "these intervening petitioners and a majority of the employees of the defendant corporation, Louisville Water Company, became dissatisfied with their bargaining agents, the plaintiff labor organizations, and they desired to terminate said contract as of December 31, 1949, and to execute a new one; that they and a majority of said employees designated the Congress of Industrial Organizations, as their new bargaining agent to notify the defendant corporation that said contract would terminate on December 31, 1949, that on Oct. 28, 1949 in its capacity as bargaining agent for the majority of the employees, the Congress of Industrial Organizations, by its Regional Director, W. B. Taylor, notified the defendant corporation that an overwhelming majority of said employees had designated it as their collective bargaining agency and of their desire to negotiate a new contract between said employees through their new collective bargaining agent and the defendant corporation; that said notification was received by the defendant corporation more than sixty days prior to December 31, 1949, the expiration date of the old contract." The communication referred to, addressed to the president of the Water Company, is in part as follows:

"This is to formally notify you that the overwhelming majority of the employees of the Louisville Water Company have signed cards designating the Congress of Industrial Organizations as their collective bargaining agency.

"You are, of course, aware of the controversy that exists within the ranks of CIO; and your employees, who are desirous of remaining within the ranks of this organization, are taking the necessary legal steps to notify you in the period of time pursuant to Section D of Article 7 of the contract now in existence between your Company and the United Public Workers of America-CIO."

The letter further stated, "We are prepared to show proof of our majority upon demand." Certain methods for ascertaining the fact were suggested. The letter requested an immediate conference of representatives of the Company and of "your employees who are members of the CIO, so that negotiations may be started that will result in a collective bargaining agreement" between them.

It is further alleged that a majority of the employees had notified the company they had not authorized any assignment of wages to the union as dues after December 31, 1949; that if the company considered the agreement to have been automatically renewed and continued to recognize the unions as bargaining agents, the petitioners and a majority of the employees would be arbitrarily and unjustly dismissed from their employment and suffer irreparable injury. An amendment stated that they had notified the plaintiff union, United Public Workers of America, that a majority of the employees had designated the CIO as their agent.

The plaintiffs filed objections to the intervention upon a number of grounds. These include the absence of right and capacity of the intervenors to terminate the agreement with the Company, and that the statement that the parties are not and cannot be members of the Congress of Industrial Organization (commonly called the CIO), as they describe themselves to be, since the CIO is not itself a labor union but a confederation or organization of labor unions or organizations, which must speak for themselves in matters relating to employers.

At the time the agreement was made, the plaintiff, United Public Workers of America, was one of the components of the CIO and its co-plaintiff, Water Workers Section of Local 620, was an affiliate of the United Public Workers. But there is an unchal-

lenged statement in the brief for the Company that subsequent to the execution of the agreement the United Public Workers had been expelled from membership in the C.I.O.

A later or supplemental intervening petition was filed by Hill and associates, individually and as members of "Louisville Water Workers Local Industrial Union 1683, an affiliate of the Congress of Industrial Organization, in behalf of themselves and other members of that union." This is substantially the same as the original intervening petition with the additional statement that the individuals and others (stated to be a majority) had formed and organized this new union, and had authorized the C.I.O. to act for and represent them in their relations with the Company; and that it was as such representative that the Regional Director of CIO had written the letter to the company of October 28, 1949. However, the pleading shows that the C.I.O. had not approved the application of the new union for affiliation, or granted it a charter, until December 8, 1949.

In short, the record is that a majority of the employees had withdrawn from the unions which had made the bargaining agreement for the year 1949 and had collectively, though not as a unit of any labor organization, designated another representative to speak for them and notify the company of their desire that the 1949 agreement should not be continued into 1950, and thereafter, within the sixty day period and before January 1, 1950, these employees had organized and become members of a labor unit affiliated with the Congress of Industrial Organizations and were proceeding as such.

The employer is neutral in the controversy, but asks a directory declaratory judgment.

We have set forth the pleadings at some length, though it is only of the more important portions, because the circuit court decided the case on them. The court's opinion was that the notice to the company of termination of the agreement should have been by the proper officers of the unions; that individual members of a labor union who have designated it or its representatives to negotiate an agreement may not later act individually, or collectively but independently of their labor association, in relation thereto; that the letter of October 28, 1949 (the only communication more than sixty days before the end of the fixed period) was not notice by the two labor unions which were parties to the contract. Therefore, the court held the agreement renewed itself for an additional one year period, and rendered a consistent judgment.

We may say that as a general proposition, the view of the trial court is well supported, and the provision respecting termination of the bargaining agreement is indeed part of the contract. But we cannot overlook the fact that the provision is wholly prospective in force and was executory at the time; furthermore, that by its letter it binds in theoretical perpetuity each and every individual who was a member of the union notwithstanding a vast majority, or all of them, may have withdrawn. Indeed, according to the record, an "overwhelming majority" had done so, and, acting collectively, had chosen another representative for the future, and it had given proper notice thereof both to the employer and to the union.

The case must be determined by our decisional law, for the only statute having any application is that part of KRS 336.130 which recognizes the right of employees freely to "associate collectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare."

■ It was contemplated a majority of these employees would remain members of the affiliated unions. We think, therefore, there is an implication of law that so far as prospective action is concerned, the provision for continuance of the agreement for another year, or annually thereafter, was dependent upon the fundamental principle that the union should represent the majority of the employees. A trade union can no more become a bargaining agent for

one who has ceased to be a member than for one who does not choose to become a member in the first instance. So the law cannot sanction the continuance of an involuntary agency any more than it could sanction its creation for a workman who was never a member of the union.

Perhaps the injustice of the situation would more clearly appear if the provision were reversed so as to provide that the agreement would terminate on December 31, 1949, unless the union should give notice of a desire to continue it. It would readily strike one as oppressive to say that where a majority of the employees no longer belonged to the union and had spoken collectively to the contrary, yet they are nevertheless bound ad infinitum by action of the officers of the union and a remaining minority of its members in giving such affirmative notice. It would be an artificial distinction to say that mere silence may legally have the same effect.

The principle of majority representation is basic, as it is in our political system, and underlies all federal and state legislation and judicial pronouncements concerning labor unions. Membership in an organized trade union is not the exclusive test of a right to bargain collectively. Following comment as to the unanimity with which it is held that employees have the right to bargain collectively, we said in Hotel, Restaurant & Soda Fountain Employees Local Union v. Miller, 272 Ky. 466, 114 S.W.2d 501, 503: "This right of unified action includes the privilege of selecting those who shall speak for the collection. As has been said by the Supreme Court: 'Such collective action would be a mockery if representation were made futile by interference with freedom of choice.'" The case involved the right of employees to act as a group without membership in a trade union connected with a national organization, which was interfering with them, and it was held they had such right.

We readily agree that members of a union acting individually, or as an independent group outside the body, may not be heard to change or violate an agreement made when they were members insofar as it relates to its current operation. These parties have not sought to do that. But, again we point out that the question is the right of the majority who have severed their connection with the union, the contracting party, to take action under the provision of an executory part of the agreement relating to its future renewal or continuance, or to act independently of the agreement.

There are two cogent considerations other than the mere fact that a majority of the employees have taken action. One is the character of the provision and the other is the right of revocation of agency.

These several labor unions, which are voluntary unincorporated associations, are entities for limited contractual purposes only. They are clothed with power by their members to make agreements with employers respecting wages, working conditions and related labor questions, and within their legitimate scope such contracts are binding upon the union as an entity and the members thereof. Saulsberry v. Coopers International Union, 147 Ky. 170, 143 S. W. 1018, 39 L.R.A.,N.S., 1203. The necessity of stability demands that. Without it there would be no security or permanancy. But the union may not act in any particular way so as to affect injuriously the personal rights of its members. A member does not have to submit to the determination of the union in any question involving his personal rights. Piercy v. Louisville & Nashville R. R. Co., 198 Ky. 477, 248 S.W. 1042; 33 A.L.R. 322; Compare Hudson v. Cincinnati & T. P. Ry. Co., 152 Ky. 711, 154 S.W. 47, 47 L.R.A.,N.S., 184, Ann.Cas.1915B, 98; McGregor v. Louisville & N. R. R. Co., 244 Ky. 696, 51 S. W.2d 953. As recently expressed in Louisville Railway Co. v. Louisville Area Transport Workers Union, 312 Ky. 656, 657, 228 S.W.2d 652, 654, the union is the agent and servant of its members and membership does not exist for the benefit of the union; hence we held that a majority of the members acting within the union had the right to transfer its property to a newly organized union which they had formed.

We furthermore held that the individual authorizations for checkoff of dues was for the limited period and did not constitute an irrevocable agreement to remain members of the local union; on the contrary, we recognized, as we had done before, that, "It is a fundamental principle that an employee joining a voluntary labor union for an indefinite period may resign therefrom at will." Otherwise, that case is not in point here. There the railway company's employees had acted as a majority within the union and had it to speak for them, while in the instant case the Water Company's employees had withdrawn before they spoke. So far as continuing the agreement into the future is concerned, it seems to us to be within the personal rights of the individuals to choose another representative to speak for them collectively. To say that such majority of the employees are yet bound by a future bargaining agreement made by an agent they had repudiated, and whose authority they had specifically revoked, and also be compelled to pay dues to that union, is as astonishing as it is violative of constitutional freedom of contract. Even within its own body, a trade union can employ no power as a means of oppression and in justice in respect of its members or deprive any of them in the form of contractual surrender or otherwise of their fundamental rights when the public interest will not be thereby served. Such assumed power cannot deprive any one of his constitutional right of liberty and property. Cameron v. International Alliance, etc., 118 N.J.Eq. 11, 176 A. 692, 97 A.L.R. 594. It is charged in the pleadings, as stated, that if the contract be continued or renewed, the intervening parties and other employees would be dismissed from their employment because they are not members of the bargaining union. The right to earn a living is property within the concept of constitutional rights, and a trade union in the service of its own interests may not deprive a person of such constitutional right. DeMille v. American Federation of Radio Artists, 31 Cal.2d 139, 187 P.2d 769, 175 A.L.R. 382, certiorari denied, 333 U.S. 876, 68 S.Ct. 906, 92 L. Ed. 1152.

Some courts regard a bargaining agreement as one made by the union for the benefit of third persons, its members; but we are committed to the concept of agency. Aulich v. Craigmyle, 248 Ky. 676, 59 S.W.2d 560; Labor Disputes and Collective Bargaining, Teller, secs. 167, 168; Notes, 95 A.L.R. 40-43.

The provision of the present agreement as to renewal, as we have said, was unexecuted at the time the majority of the employees designated another agent, who proceeded to act for them. It is, of course, elemental that when an agency is not coupled with an interest and no third party's rights are involved, the agency, so long as it remains unexecuted, may be revoked by the principal and the agent deprived of further authority to act. 2 Am.Jur., Agency, sec. 37. This is so although the authority is expressed as being irrevocable, a liability for damages for wrongful termination being, however, created. Am.Law Inst., Agency, sec. 118; White Co. v. W. P. Farley & Co., 219 Ky. 66, 292 S.W. 472, 52 A.L.R. 541.

We take note that under federal and state labor statutes, whose terms are perhaps more restrictive than the common law, as a general proposition if a union at any time ceases to represent the majority of the employees in the appropriate unit, it loses its power to bargain for the unit, Note 144 A.L.R. 454, and that it was held in Triboro Coach Corporation v. New York State Labor Relations Board, 286 N.Y. 314, 36 N.E.2d 315; Id., 287 N.Y. 647, 39 N.E. 2d 276, 144 A.L.R. 410, that employees who have selected a labor union as their bargaining representative and have allowed it to enter into such an agreement, binding for a fixed period of time, are, while the contract is in force, free to select another union as their bargaining representative for the purpose of entering into further contracts with the employer upon the expiration of the existing agreement.

Our conclusion of the whole matter is that the provision for continuing the bargaining agreement by inaction on the part of the trade unions did not, in its prospective effect, legally bind members of the

union who had withdrawn, and that where a majority of the employees of an industry have severed their membership and acting collectively have chosen another agent, and authorized their new agent to terminate the agreement according to its terms, it may be done. The termination of that particular agreement, of course, carried with it the cessation of the authority to the employer to pay the checkoff dues to the union in the future. That authority, it may be added, was also specifically withdrawn by each of these employees.

The point is argued by the appellee labor unions that, because of its nature, there is no legal power in the C.I.O. to act for the employees. At the time the notice was given, the employees were apparently unorganized as a union, but before the end of the year they had become organized as a local and chartered as an affiliate of the C.I.O. and such union confirmed and ratified the action theretofore taken. We do not think the appellees can be heard to raise the question of ultra vires. The salient fact and controlling point is that the majority of the employees had revoked the agency of the unions to continue the agreement.

The issue before us being upon the demurrer to the intervening petitions, the courts, of course, must accept as true the well-pleaded allegations. We are of the opinion the trial court should have overruled the demurrer and permitted the parties to take proof on the issue of whether in fact a majority of the members and former members of the union acted in revoking the agency and chose the new agent which represented them in this matter.

We are not advised what the situation has been during the long interim between the institution of the litigation in January, the decision of the trial court in April, and submission of the case here on September 26th. As the year 1950 will have drawn to a close, or nearly so, before final judgment can be entered, we suppose the principal if not sole question will be as to who is entitled to the impounded dues retained from the employees, for doubtless a new bargaining agent will have been chosen for

1951 or the authority of the plaintiff unions exercised, if it be found not to have been legally revoked.

The judgment is reversed.