77 So.2d 363

**T. M. HEAD (Tom Head Barber Shop),**

v.

**LOCAL UNION NO. 83, JOURNEYMEN BARBERS et al.**

**6 Div. 767.**

Supreme Court of Alabama.

Jan. 13, 1955.

Lange, Simpson, Robinson & Somerville, Jas. A. Simpson and Chas. B. Robinson, Birmingham, for appellant.

J. L. Busby and Earl McBee, Birmingham, for appellees.

MERRILL, Justice.

Appeal from an interlocutory decree overruling demurrer to the bill of complaint. Complainants are Local Union No. 83, Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors' International Union of America, and Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors' International Union of America. Respondent and appellant is T. M. Head, who does business as "Tom Head Barber Shop" and who, it is alleged, "habitually works with the tools of the trade in his said barber shop."

The purpose of the bill is to prevent appellant from retaining and displaying the Union Shop Card which is the property of the International Union and was placed in the custody or possession of appellant under an agreement executed on October 14, 1952, which is Exhibit C to the bill and the pertinent part of which is as follows:

"I, Tom Head, do hereby agree that in consideration of being allowed to display Union Barber Shop Card No. 39612, of the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors' International Union of America, in my Barber Shop, No. 1906, 11th Avenue South, that I will comply with all the conditions imposed in the 'Rules Governing Shop Cards' which are printed on the back of said Union Shop Card and any subsequent rules and laws of the International Union.

"I also agree, that the Union Barber Shop Card is now, and shall remain the property of the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors' International Union of America, and that it is loaned to me only during such times as the conditions imposed are fulfilled by me, and further, said Union Barber Shop Card not being my property, I have no right to sell the same nor transfer it to any person, nor place, except as duly authorized in the 'Rules Governing Shop Cards.'

"I also further agree, on demand to peaceably allow, without interference on my part or others, any duly appointed representative of the International or Local Union to remove said Union Barber Shop Card from any point of display, and such removal shall not be held by me to be an act of violence."

The union shop card is made an exhibit but it is specifically averred that the following provision appears on the reverse side of the card:

"The contract, or agreement, called for by these laws shall be so construed that the person or persons displaying the shop card shall specifically agree: (a) to abide by the laws of the J. B. H. C. and P. I. U. of A. governing shop Cards and such laws as may be made in the future for the proper governing of the same."

It is also averred in the bill that:

"Article 7 of Section 5 of the Constitution of Complainant International, which said Constitution sets forth the 'rules governing Union Shop Cards' provides: 'No Shop Card shall be displayed in a barber or beauty shop, unless all persons working in the shop with the tools of the trade are members of the Union in good standing.' The above and foregoing provision of the Constitution of the complainant International has been in effect continuously since January 1, 1949, and during said entire period of time proprietors have been eligible for membership in complainant Unions or a Proprietors' Guild of Complainant International and specifically the Constitution revised in September 1953, and effective January 1, 1954 provides as follows:

" 'Any barber or beautician, journeyman proprietor or employer, who works at the trade, and who is otherwise qualified, is eligible to membership in any local union, and all members are

entitled to equal rights of membership, including the right to vote and hold office.'

" 'The right of membership in an Employers Guild is restricted to employer barbers or beauticians who habitually work with the tools of the trade.'

" 'An Employers' Group is defined as being a group of fifteen or more employer barbers, defined as employer barbers in paragraph 3 of this Section, and chartered as provided in Article III, Section 1.' "

Complainants also allege that:

"7. Respondent T. M. Head habitually works with the tools of the trade in his said barber shop and is in every way qualified for membership in complainant unions and in an Employers Guild of Complainant International, if one were organized in Birmingham, Alabama. However, Respondent has steadfastly refused to become a member of complainant unions in any capacity, after having been requested to do so by complainant unions or their authorized representatives and has nevertheless persisted in retaining and displaying said Union Shop Card in said barber shop unlawfully and contrary to said agreement and over the objection of and openly defiant of the rights of complainant unions and has refused to peaceably surrender said Union Shop Card to duly appointed and authorized representatives of the complainant Unions after proper demands heretofore made by them upon him."

In addition to the prayer for process and general relief, the prayer of the bill is as follows:

"Complainants pray that a temporary injunction or restraining order issue against Respondent, his agents, servants or employees:

"(a) Restraining and prohibiting the display of said Union Shop Card No. 39612 in the barber shop at 1906—11th

Avenue, South, Birmingham, Alabama, or elsewhere, so long as respondent Tom Head, or T. M. Head, shall fail to comply fully with the contract made Exhibit C to the Bill of Complaint.

"Upon final hearing Complainants pray that said contract made Exhibit C hereto be specifically enforced and that Respondent be required to comply with the requirement of Union membership or in the alternative to comply with that provision thereof requiring the surrender of said Union Shop Card 39612 to Complainants.

"Complainants further pray that said temporary injunction as hereinabove prayed be made permanent and further, in the event Respondent Tom Head, or T. M. Head, shall neither voluntarily join nor be required to join Complainant Unions or an Employers Guild of Complainant International, then Complainants pray for the issuance of a mandatory injunction requiring Respondent to surrender and deliver said Union Shop Card to Complainants."

Respondent demurred to the bill as a whole; to the aspect which seeks to have the Respondent restrained from displaying the union shop card, and to the aspect which seeks to have the respondent comply with the requirement of union membership or in the alternative surrender said union shop card to complainants. The demurrer was overruled and appellant appealed.

The matter presented here is similar to that considered in 1951 in Foutts v. Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, Local No. 105, 155 Ohio St. 573, 99 N.E.2d 782, 785, the only material difference being that there the proprietor barber sought to enjoin the union from removing the union shop card. In that case the court said:

"The provisions of the 1936 agreement, under which plaintiff claims a right to continued use of the union shop card, negative the existence of that right in the instant case. In that

agreement, he specifically agreed to comply with all conditions imposed in the rules governing shop cards printed on the back of the shop card, and agreed that the card should remain the property of the defendant, that it was loaned to the plaintiff only during such time as those conditions were fulfilled by the plaintiff, and that plaintiff would on demand peaceably allow the defendant union to remove the shop card from any point of display. Under the rules printed on the back of the shop card, the plaintiff was specifically required to abide by 'laws * * * made in the future for the proper government of' such shop cards. If the plaintiff refuses to become a proprietor member of the defendant union, then admittedly he will not have complied with the provisions for government of shop cards contained in the union constitution as amended in 1948. Furthermore, under the rules printed on the back of the shop card, plaintiff specifically agreed 'to peaceably give up said shop card * * * for any other cause when called upon to do so.'

"In order to hold that the plaintiff has any right, under the 1936 agreement, to continued use of the union shop card, it would be necessary to read something into his agreement with the union which is not there and which would be contrary to the express provisions of that agreement.

"In order to sustain the plaintiff's claim that he has a right under the 1936 contract to continue to display the union shop card, the Court of Appeals held, in effect, that it was not proper and legal for the union to limit the use of its shop card to barber shops in which all who work as barbers are union members, where the necessary effect of such limitation will require the proprietor of a barber shop to become a member of the union with rights of membership inferior to those of employee members of the union. The Supreme Court of Georgia subsequently refused to be persuaded by that holding and rendered a decision for the union on substantially the same facts. Rainwater v. Trimble, 1950, 207 Ga. 306, 61 S.E.2d 420.

"In the instant case, we do not deem it necessary to determine whether it is a proper and lawful labor objective to compel an employer, working in competition with his employees, to join the employees' union as an employer member with rights inferior to those of the employee members.

"[1] Where, as here, there is no contractual obligation to continue to recommend or approve the services of another, we know of no common-law or statutory principle of public policy which requires one, who is accustomed to recommend and approve the services of others, to continue to recommend and approve the services of someone whose services he no longer wishes to recommend or approve, regardless of the lack of merit in the reasons he may have for discontinuing his recommendation and approval of those services. There may be limitations on the right of such one to criticize the services which he no longer wishes to recommend and approve but there is certainly no limitation on his right merely to discontinue his recommendation or approval of those services.

"Where one relies upon the recommendation and approval of another to build up his business without any agreement limiting the causes for which such recommendation and approval may be discontinued, such one necessarily runs the risk that such other may, without just cause, determine to discontinue such recommendation and approval.

"[2] Where picketing, a strike or a boycott against an employer by a union is involved, it may be appropriate to determine whether the object sought to be achieved by such union activity is legal and proper. Crosby v. Rath, 136 Ohio St. 352, 25 N.E.2d 934, certiorari denied 312 U.S. 690, 61 S.Ct. 618, 85

L.Ed. 1126; Restatement of the Law of Torts, Section 775. However, where a union merely discontinues its recommendation or approval of an employer and is under no contractual obligation to continue such recommendation or approval, it may discontinue such recommendation or approval for any reason. See Section 6226, General Code; Saulsberry v. Coopers' International Union, 147 Ky. 170, 143 S.W. 1018, 39 L.R.A.,N.S., 1203; annotation, 39 L.R.A.,N.S., 1190; Tracy v. Banker, 170 Mass. 266, 49 N.E. 308, 39 L.R.A. 508; 31 American Jurisprudence 869, Section 84; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 499, 69 S.Ct. 684, 93 L.Ed. 834, 842; International Brotherhood of Teamsters v. Hanke, 339 U.S. 470, 474, 70 S.Ct. 773, 94 L.Ed. 995, 1001. Cf. Letts v. Kessler, 54 Ohio St. 73, 42 N.E. 765, 40 L.R.A. 177.

"[3–5] The display of the union shop card in the instant case is a representation by the plaintiff to his employees and to the public that the plaintiff is recommended by and has the approval of the defendant union. If the plaintiff is not so recommended and does not have that approval, then that representation is false. Such a false representation will necessarily tend to deceive the public and the employees of the plaintiff. In the instant case, if a court of equity enjoins the defendant union from removing its shop card when the defendant union no longer either recommends or approves the plaintiff, then that court will thereby enable the plaintiff to deceive the public."

In the case of Rainwater v. Trimble, 207 Ga. 306, 61 S.E.2d 420, 421, cited in the Foutts case, the court said:

"The agreement between the union and the employer barbers as to the right to display the union card in their barber shops is plain and unambiguous. The employer barber agrees to abide by the rules of the union governing the display of this card—not only the rules in existence at the time he acquires the card, but all other rules as may be made in the future. The union having amended its rules governing the display of the card by requiring the employer barber to join the union in order to retain the use of the card, this was in accordance with the terms of the agreement. Though the membership offered the employer barbers is a limited membership, yet, it being a rule adopted by the union, and there being nothing in the agreement limiting the effect of future rules, such action was covered by the terms of the agreement, which should be binding unless it is in contravention of some rule of law."

We concur with the statements we have quoted from the Ohio and Georgia cases respecting the right of removal of the union shop card in this case. We also note that in each of these cases the union membership offered the proprietor was limited or inferior, while here the appellant was "entitled to equal rights of membership, including the right to vote and hold office."

■ Appellant, in his very ingenious brief, contends that the principles of the Foutts case and the Rainwater case do not apply because the agreement between appellant and the union is unlawful in that it is in conflict with Code of 1940, Title 26, § 391 (Pocket Part), which reads, in part, as follows:

"It shall be unlawful for any executive, administrative, professional, or supervisory employee to be a member in, or to be accepted for membership by, any labor organization, the constitution and by-laws of which permit membership to employees other than those in executive, administrative, professional, or supervisory capacities, or which is affiliated with any labor organization which permits membership to employees other than those in an executive, administrative, professional, or supervisory capacity. * * *"

That section applies to an *employee*, not to an *employer*, as is appellant Head and

it cannot render the agreement here unlawful.

It is also contended that the contract is in violation of Article 4, §§ 375(1) to 375(6), Title 26 (Pocket Part), denominated "Right to Work". Section 375(7), Title 26 states:

"The provisions of this article shall not apply to any lawful contract in force on the effective date hereof but they shall apply in all respects to contracts entered into thereafter and to any renewal or extension of an existing contract."

Therefore, if the agreement was lawful, and we so hold, the "Right to Work" statute has no application by its very terms. However, we would not be understood as holding that it would apply to the instant case even in the absence of Section 375(7), supra.

The decree of the lower court overruling the demurrer is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.