Isaac S. DICK (Now Ada Dick, Adm'x of Isaac S. Dick, Deceased), Appellant.

v.

INTERNATIONAL HARVESTER COMPANY et al., Appellees.

Court of Appeals of Kentucky.

Jan. 24, 1958.

Rehearing Denied March 21, 1958.

J. B. Johnson, Harlan, J. S. Golden, Pineville, for appellant.

James Sampson, Wm. A. Rice, Harlan, for appellees.

STANLEY, Commissioner.

Isaac S. Dick, an employee of the International Harvester Company, became disabled by silicosis and applied for workmen's compensation. After an appeal from a judgment confirming the denial of an award by the Compensation Board was filed, Dick died, and the case was revived by his administratrix.

The claim arose before the effective date of the amendment of KRS 342.005(2) by an Act of 1956 (§ 1, Ch. 77, Acts of 1956), which did away with a special acceptance of silicosis coverage. Before the amendment the statute contained the provision, "and any employers and their employees may, with respect to the disease of silicosis caused by the inhalation of silica dust, in like manner voluntarily subject themselves thereto as to such disease." The "like manner" was "by joint, voluntary application to the board in writing." This was construed as being specially elective and that disability from silicosis was not compensable if the parties had not complied. Nolley v. Diamond Coal Co., 291 Ky. 849, 165 S.W.2d 841; Eastern Coal Corp. v. Morris, Ky., 287 S.W.2d 603. It is agreed in this case that there was no written application or notice of election filed with the Board.

We have a clear case of an industrial disability which apparently caused the death of a faithful employee. Isaac S. Dick had worked in the mines 29 years and had been an employee of the International Harvester Company for a period of five years until his disability compelled him to quit work. If his disability had occurred a short time later, when the statute had been amended, there would be no question of its compensability. Strictly measured, there was no compliance with the law in effect when the disability occurred. The question is presented whether there was such an election (1) by the workman by virtue of a statutory presumption, and (2) by the employer by virtue of the legal effect of its contract with the workman's union or by estoppel to deny its election.

We approach the decision under the influence of the remedial principle of workmen's compensation and the development and progress of legislation to accomplish its humane and beneficent purpose. This is coupled with the express mandate of the statute that the Act "shall be liberally construed on questions of law." KRS 342.004. Therefore, any doubt as to its scope and application with respect to disabilities or injuries where the facts have been found must be resolved in favor of the workman or his dependents. All presumptions will be indulged to accomplish that end. Consolidated Coal Company's Receiver v. Patrick, 254 Ky. 671, 72 S.W.2d 51; Adams v. Bryant, Ky., 274 S.W.2d 791.

For many years the statute required every workman to sign a register signifying his agreement or election to work under the Compensation Act. Experience revealed that often this was not done through neglect or, occasionally, through some deliberate omission or conduct on the part of the employer. More often difficulty of proving acceptance was encountered. So, progressive legislation has been enacted to protect a workman's rights in this regard. In 1948 the Act was amended to simplify the manner of acceptance by the employee. Then, in 1952 the statute was again amended to provide that in the event an employer had elected to operate under the Act, the employee by virtue of and as a part of his contract of hiring "shall be deemed to have accepted all provisions of this chapter and shall be bound thereby" unless he shall have filed written notice with the employer to the contrary. Acts of 1952, Ch. 82, now

KRS 342.395, 1953 edition. See Wells v. Jefferson County, Ky., 255 S.W.2d 462, sustaining the constitutionality of the amendment.

■ This workman, Isaac S. Dick, applied for benefits on January 8, 1956, which was four years after the law made his contract of hire an election of *all the provisions of the act*. There is no indication that he ever gave a notice to the contrary. At the time this man became disabled silicosis was not regarded as being an occupational disability within the general coverage of the Act, but, as shown above, it could be brought within the coverage in the same way in which the parties had previously brought themselves under the Act generally, namely, "by joint voluntary application to the board." KRS 342.005(2). The conclusion, therefore, is that Dick had by operation of the statute accepted the provision of the statute which declares disability by silicosis to be compensable.

We may add for clarification in cases arising after August 1, 1956, that when the 1956 Act amended subsection (1) of KRS 342.005 to specifically include disability from silicosis within general coverage, along with traumatic personal injury, the provision in subsection (2) of that section for a special election to include silicosis disability was eliminated. To make this amendment and elimination clear and certain, KRS 342.395 was amended by adding the specific clause that acceptance of the Act by an employee by virtue of his contract of employment shall include "silicosis and any other occupational disease." Ch. 77, §§ 1 and 14, Acts of 1956, now incorporated in the 1956 edition of the Kentucky Revised Statutes.

■ We turn to the question of whether the *employer,* who had not formally or specially accepted the silicosis provision, should be deemed as a matter of law and justice to have done so.

From the beginning of workmen's compensation legislation the statute has pro- vided that election by an employer to operate under the Act generally shall be effected by filing a notice of election with the Compensation Board. KRS 342.290, formerly § 4956, Kentucky Statutes. This was and is "the event" referred to in KRS 342.395 declaring that the contract of hiring shall be deemed to have been an acceptance of all provisions of the Act. Our earlier cases required as a condition to allowing compensation to an injured workman or his dependents in case of his death that his employer had actually filed a written acceptance with the Board. But later cases departed from that legalism and held, notwithstanding a failure to comply with the prescribed formalities, that any substantial step taken to accomplish that end would be regarded as an election to operate under the Act if failure to go through with it misled or resulted in detriment to the employee. This, of course, rests on estoppel. It may be here observed that while a proceeding in a workman's compensation case is under a statute, it is special in character and should be treated as equitable to the extent that the adjudication of a claim requires the proper application of the rules of equity. 58 Am.Jur., Workmen's Compensation, § 403.

In the case before us the bargaining agreement between the International Harvester Company and its employees' labor union, of which Dick was a member, contained this section:

"*Workmen's Compensation and Occupational Diseases.*

"Section 6. The company will comply with the Workmen's Compensation and Occupational Disease Laws of the State of Kentucky."

In these later years not many employers in industry deal with each employee separately as regards wages, working conditions and related labor questions. This aspect of the case, namely, the contract between the employer and all its employees through and by a labor union, like the progressive legislation to assure compensation

to workmen for industrial disability, is a development of the times. The bargaining contract in this case is of the customary comprehensive character. In making it the union was the authorized agent and representative of its members, and all parties are bound by it. Day v. Louisville & Nashville R. Co., 295 Ky. 679, 175 S.W.2d 347; Hill v. United Public Workers Union, 314 Ky. 791, 236 S.W.2d 887. So, in dealing with the agent the company dealt with each member of the union represented by it.

The company contends that by this contract it had done nothing more than agree to join with its numerous employees, acting individually and separately, to elect to come within the silicosis coverage whenever the employees requested it. Its explanation given in evidence is that it was waiting until each employee made the first move.

As we have seen, the enactment of the 1952 amendment had the effect of constituting this man's contract of employment an election on his part to accept *all provisions* of the Act. The fact that Dick had in law already elected was apparently overlooked by the company. In any event, the company had unqualifiedly committed itself to Dick and other members of the union that it "will comply with the Workmen's Compensation and *Occupational Disease laws*" of the state. Silicosis was at the time regarded as an occupational disease, although not within the general coverage. Jones v. Crummies Creek Coal Co., Ky., 264 S.W.2d 294. This provision could well be regarded as constituting an election by the company. It certainly had that effect so far as the employees were concerned. But the company did not go through with its election by notifying the Compensation Board. In L. E. Marks Co. v. Moore, 251 Ky. 63, 64 S.W.2d 426, we held that the employer was estopped to deny it was operating under the Act where it had executed an application to do so and had left it to an agent to file with the Board and he had failed to file it. The employee had signed the register signifying his acceptance and was advised that the employer was operating under the Act. The only material difference between this case and the Marks case is that here the employee had a promise looking to the immediate future, while in the Marks case there was a statement of a past acceptance, when, as a matter of fact, the employer had only begun the procedure and through negligence had not consummated the acceptance.

In Ginn v. Walker, Ky., 273 S.W.2d 840, we held the accidental death of a man working on a farm for an employer who had less than three employees was not compensable because the employee had not joined with his employer in an application to operate under the Act. The section of the statute which required a farmer or an employer of fewer than three persons and his employees to make a special election to come under the general coverage is the same as that which required a special acceptance of the silicosis provision by those already under general coverage. KRS 342.005(2). The opinion does not show that the accident occurred after the 1952 amendment to KRS 342.395(2), which creates the presumption of an employee's acceptance. If it did so occur, the presumption was not called to our attention. The element of estoppel was not considered.

In the case at bar the opinion of the Board that no compensation could be awarded is based on the Ginn case.

Since the present case was decided by the Board and the circuit court, we have rendered the opinion of Carrs Fork Coal Co. v. Yancey, Ky., 297 S.W.2d 914, 917. In that case we referred to the skimpy and unsatisfactory record in the Ginn case and construed that opinion to be "authority only for the principle that it takes more than bare intention to satisfy the requirements of the subsection (2) [KRS 342.395(2)] concerning the duty of the employer and employee to make 'joint, voluntary application to the board, in writing' before coverage is invoked."

In the Carrs Fork Coal Company case the Compensation Board, following the Ginn case, had dismissed an application for compensation for silicosis disability solely upon the ground that the parties had not actually filed a joint application according to the terms of KRS 342.005(2), although it appeared proceedings short of filing had been taken by both parties. Reviewing our several cases relating to an estoppel of an employer to deny acceptance of the Act generally, we held the doctrine to be "firmly established in compensation law" and to be applicable to the acceptance of the silicosis section of the Act. We affirmed the judgment which remanded the case to the Board for a trial on the merits and a determination of the matter of estoppel in relation to such finding of facts. In the present case there was "more than a bare intention to satisfy the requirements" of the Act relating to "application to the board, in writing." There was a binding contract that International Harvester Company "will" do so.

We cannot agree with the appellees' argument in the present case that the element of detriment or deception of the employee is absent. On the one part we have his acceptance of the silicosis provision as a matter of law. On the other part we have a contract of the company made with his agent that it would accept all its terms as to occupational diseases. The employee had the right to rely upon that commitment or that election, whichever way it may be regarded. We may attribute to him the belief that he was or would be covered by workmen's compensation, Smith Coal Co. v. Feltner, Ky. 260 S.W.2d 398, and a reliance upon the company not taking advantage of its own failure to actually file the necessary formal application or notice with the Compensation Board, and not taking the position it was not liable for his disability because of that failure. Jones v. Crummies Creek Coal Co., Ky., 264 S.W.2d 294. We hold that appropriate compensation should be awarded the appellant.

The case has been fully developed and the facts are undisputed. Unlike the Carrs Fork case, there is no need for this case to be remanded to the Board for any finding of fact upon which the ultimate decision of law as to liability must rest. It is, however, necessary that the Board find the amount of the compensation, and the circuit court should remand the case to the Board for that purpose.

The judgment appealed is reversed with directions to enter another judgment in conformity with this opinion.

CAMMACK, STEWART and MONT·GOMERY, JJ., dissent.