115 So.2d 285

**BARBERS' LOCAL UNION NO. 715 et al.**

**v.**

**Stanley O. ROBERTS et al.**

**I Div. 796.**

Supreme Court of Alabama.

Oct. 29, 1959.

D. R. Coley, Jr., Mobile, for appellees.

Thos. M. Marr and Cecil B. King, Mobile, for appellants.

LIVINGSTON, Chief Justice.

This is an appeal from a decree sustaining a demurrer to a bill in equity as finally amended and denying a temporary injunction.

The complainants are Barbers' Local Union No. 715, an Unincorporated Asso-

ciation of Mobile, Alabama, and its secretary and president. The respondents are Stanley O. Roberts and George D. Hawkins, individually, and doing business as Hawkins and Roberts Barber Shop, jointly and severally. The bill was first amended after demurrer was filed but prior to a ruling on the demurrer. There were six separate decrees sustaining demurrers to the bill as it was six times amended. The essence of the bill, from the beginning to the end, is that the respondents entered into a contract or agreement with the Barbers' Local Union, the pertinent provision of which was that the parties thereto would charge stipulated minimum prices for haircuts and other services to customers or patrons, and that respondents violated said agreement by charging a lesser rate for such services and by advertising that they would render such services for a lesser rate of pay than what they had agreed to in said contract. The essential relief sought is by way of an injunction restraining respondents from violating such contract or agreement, and an ascertainment of damages sustained by complainants.

We are not concerned with the purported contract made exhibit to the original bill, for the reason that the bill was amended before decree on the demurrer, by substituting another, different, and later contract or agreement, consisting of an application by one of the respondents for membership in the union and a "Working Agreement" adopted by the union, stipulating minimum prices for haircuts and other services. Both these instruments were made exhibits to the amended bill as "B" and "C", respectively. It is alleged that respondents by the application for membership agreed to be bound by the constitution and bylaws of the union and the local branch to which they belong and all rules and laws adopted in accordance with the constitution. It is alleged that the other respondent also made application for membership, but that it had been temporarily misplaced.

Nowhere was it alleged up to this point that respondents were, or had been, members of the union or the local, and the exhibited application is unclear as to whether or not it was accepted. There is a conflict between the allegations that the respondents were bound by the working agreement and the paper exhibited, in that the exhibit recites that it is an agreement between the union and the members whose signatures appear thereon. There are no signatures, and there is an absence of allegation that respondents were signatories. The exhibits, of course, must control.

By successive amendments to the bill, it was alleged that respondents were members of the local union at the time the agreement was adopted, were members at the time of the alleged breach, and are members of said union. The bill as finally amended, and which amounts to a revised bill, is to the effect, as stated hereinbefore, that it differs from the first amendment in that, instead of alleging a written agreement as exhibited, it alleges that the local union "has entered into an agreement with respondents wherein respondents agreed to charge not less than $1.50 for adult haircuts," etc., "for a period of one year." It is then alleged that respondents violated said agreement by charging a lesser rate for their services.

It is not alleged whether this purported agreement was oral or in writing. It is not anywhere alleged that respondents entered into the purported agreement in the capacity of employers, or that there was any contractual relation between the parties as union bargaining agent and employers. On the contrary, as we have shown, it is made to appear that the relationship was that of union and members.

Since the bill was so many times amended, there were so many interlocutory decrees, we are of the opinion that instead of treating the less serious defects pointed out by the various grounds of the demurrer, and which if sustained might yet be amend-

able and leave the litigation open for still other amendment and consequent delay, we should extract the essential meritorious question, decide it, and thus put an end to the prolonged controversy. That question is whether the bill has equity as one for injunctive relief.

Appellants rely upon cases such as our own case of Head v. Local Union No. 83, Journeymen Barbers, 262 Ala. 84, 77 So. 2d 363. But that case, as well as those from other jurisdictions, involved contracts between the union and proprietors. The Head case, supra, involved the display of the union card by a proprietor who refused to comply with the rule that all persons working in the shop be members of the union. As we have shown, there is not involved in this case a contract between union and proprietors, but one between union and members.

Appellants assert as a proposition of law that:

"A court of equity will interfere with the internal affairs of a voluntary association and will assume jurisdiction to enjoin a violation of the rules, by-laws, and constitution by members where the violation is unauthorized and occasions irreparable injury for which there is no adequate and complete remedy at law."

And from this premise, appellants argue that equity will enjoin breach of an agreement between union and members setting minimum prices for barbers' services. Medical Society of Mobile County v. Walker, 245 Ala. 135, 16 So.2d 321; Francis v. Scott, 260 Ala. 595, 72 So.2d 98; and McNulty v. Higginbotham, 252 Ala. 218, 40 So.2d 414, are cited. None of these authorities so hold, none involved a situation like this. Our research has disclosed no case affirming the jurisdiction of equity to compel obedience by a member to a price-fixing scale adopted by the union. On the contrary, a very clear statement of what in our opinion is the correct rule

is found in 31 Am.Jur., Labor, Secs. 62, 64, p. 434, as follows:

"§ 62. Where one chooses voluntarily to unite with others of the same craft in forming an organization for the purpose of bringing about by the united action of all its members more favorable conditions of employment, he is bound, so long as he desires to remain a member of that organization, to submit within certain limits his own freedom alike of judgment and of action to the judgment of his associates, and to conform his conduct to that standard which they shall have agreed to be for the best interest of all. Accordingly, a labor union has a right to act for itself in the enforcement of its bylaws governing the conduct of its own members * * *.

"While a union may discipline a member for refusal to obey its regulations by depriving him of its privileges, it has no. right to follow him outside of the order and invade his constitutional rights * * *."

"§ 64. Obedience to the bylaws and regulations may be enforced by fines and other suitable penalties. Fines may be imposed, for instance, for tardiness, absence, failure to pay dues, or for misconduct affecting the organization or any of its members, and for numerous other acts. * * *"

It is not contended that any internal disciplinary action has been undertaken by complainants, nor that such action on its part would have been inadequate. But even if this were so, we do not think the case one for equitable interference. If the union exercised its power to withdraw membership, it could not follow respondents and enforce obedience to a rule by which they were no longer bound. The union could, of course, enjoin their holding themselves out as union barbers, as was held in Head v.

Local Union, supra. Moreover, the price-fixing rule is one which the courts would look upon with disfavor. It has been said that "a rule whereby members were bound under penalty not to work for less than a scheduled price has been held void, on a ground analogous to that governing contracts in general restraint of trade." 31 Am.Jur., Labor, § 41, p. 420; Moore v. Bennett, 140 Ill. 69, 29 N.E. 888, 15 L.R.A. 361.

We, therefore, reach the conclusion that the court below correctly sustained the demurrer to the bill as amended and denied the writ. In view of the repeated opportunities afforded complainants to amend, we are persuaded that the trial court properly omitted any order granting any further leave to amend.

Affirmed.

SIMPSON, GOODWYN and MERRILL, JJ., concur.